# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 05-3078

_____

| | | |
|---|---|---|
| Boutros Chafic Habchy, | * | |
| | * | |
| Petitioner, | * | |
| | * | |
| v. | * | |
| | * | |
| Alberto Gonzales, Attorney General; | * | |
| Michael Chertoff, Secretary of the | * | |
| Department of Homeland Security; | * | |
| Asa Hutchinson, Under Secretary for | * | |
| Border and Transportation Security; | * | Petition for Review of an Order of |
| Michael J. Garcia, Assistant Secretary | * | the Board of Immigration Appeals. |
| for Immigration and Customs | * | |
| Enforcement; Debbie Achim, ICE | * | |
| Detention and Removal Operations | * | |
| Field Office Director, Chicago, IL; | * | |
| Ken Carlson, ICE Deputy Field Office | * | |
| Director, Kansas City, MO; Wardell | * | |
| Nance, Director, ICE Detention and | * | |
| Removal Operations, St. Louis, MO | * | |
| 63108, | * | |
| | * | |
| Respondents. | * | |

_____

Submitted: September 29, 2006
Filed: December 20, 2006

_____

Before ARNOLD, BYE, and MELLOY, Circuit Judges.

_____

MELLOY, Circuit Judge.

Boutros Chafic Habchy, a native and citizen of Lebanon, petitions this court for review of two decisions of the Board of Immigration Appeals ("the Board") denying him relief under this country's asylum laws. First, he argues that the Board erred in affirming the denial of his motion to reconsider a decision of the Immigration Judge ("IJ"), in which the IJ refused to reopen a removal order on the basis of ineffective assistance of counsel. Second, he argues that the Board erred in refusing to reopen his case on the basis of changed country conditions in Lebanon between 2000 and 2003. We deny the petition for review.

## I. BACKGROUND

Habchy entered the United States at the Miami International Airport in 2000. He lacked proper documentation, and he immediately requested asylum. Habchy claimed that he had suffered past persecution at the hands of Hizballah, who detained him and accused him of aiding Israel. Habchy also claimed that he feared future persecution on the basis of his religion (Christianity) and his political beliefs, whether real or imputed. After a venue transfer, his case was set for a hearing before an IJ in St. Louis on November 21, 2000.

Habchy's counsel attended the hearing, but Habchy did not. Habchy's counsel moved for a continuance to locate him, but the IJ denied the motion and ordered Habchy removed in absentia under 8 C.F.R. § 1003.26(c). One month later, Habchy made a pro se motion to reopen his proceedings with the IJ. He claimed lack of notice and ineffective assistance of counsel because his lawyer had failed to provide him with notice of the hearing. While there was no question that his lawyer had received notice of the hearing, thus satisfying the regulatory requirements under 8 C.F.R. § 1003.26(c)(2), Habchy argued that the lawyer had not relayed the notice to him. According to Habchy, she sent him a letter regarding his case that did not provide the

hearing date, and she failed to mention it when Habchy was in her office the day before the hearing was scheduled to take place.

The IJ denied the motion on procedural grounds, noting that Habchy failed to satisfy two of the three requirements for motions to reopen on the basis of ineffective assistance of counsel as described by the Board in Matter of Lozada, 19 I. & N. Dec. 637, 639 (B.I.A. 1988). In particular, Habchy failed to attach an affidavit setting forth relevant facts and the scope and terms of his representation with his former counsel, and he failed to make a formal complaint regarding her ineffective assistance with the appropriate bar association, or at least to explain why he had not taken such action. Habchy did fully satisfy one Lozada requirement by informing his lawyer of the allegations and giving her an opportunity to respond, as evidenced by the attachment of her affidavit to his motion.

Habchy did not appeal this ruling to the Board. Instead, he obtained legal counsel and filed another motion with the IJ, which he styled as a "motion to reconsider" the denial of his initial motion to reopen. He filed it 223 days after his removal in absentia, 192 days after filing his pro se motion to reopen, and 137 days after the IJ ruled on his motion to reopen. In this second motion, Habchy purported to cure the defects in his pro se motion to reopen with materials that would satisfy the Lozada requirements, including a copy of a letter he filed with the Missouri Bar Association describing the events, an affidavit setting forth the terms of the representation, and an affidavit of his former counsel. The IJ denied his motion on three alternative grounds: (1) it was untimely, given the thirty-day limit on filing motions to reconsider, (2) even if it was timely, it alleged no error of fact or law as required by motions to reconsider, and (3) even if the IJ were to construe it as a proper second motion to reopen, which he would have to do in order to consider the new evidentiary materials, it was not clear whether the letter that Habchy sent to the state bar constituted a "complaint" within the meaning of Lozada. Id. at 639.

Habchy appealed this ruling to the Board, and it affirmed on March 7, 2003, solely on the ground that his second motion was untimely. Shortly thereafter, Habchy filed a motion to reopen before the Board, alleging that country conditions in Lebanon had materially changed between 2000 and 2003. The Board denied this motion on the merits, finding that Habchy had failed to make an adequate showing of changed conditions during that time period.

Habchy filed a petition for habeas corpus in the United States District Court for the Eastern District of Missouri on May 11, 2005 —the same day that President Bush signed the REAL ID Act of 2005 into law—and the district court transferred the case to this court pursuant to the Act. REAL ID Act of 2005, Pub. L. No. 109-13, 119 Stat. 231, 311, § 106(c) (codified at 8 U.S.C. § 1252 note).

## II. DISCUSSION

We review decisions of the Board denying motions to reopen or reconsider for abuse of discretion. Hernandez-Moran v. Gonzales, 408 F.3d 496, 499 (8th Cir. 2005); De Jimenez v. Ashcroft, 370 F.3d 783, 790 (8th Cir. 2004).[1] This court may find an abuse of discretion where "a decision is without rational explanation, departs from established policies, invidiously discriminates against a particular race or group, or where the agency fails to consider all factors presented by the alien or distorts important aspects of the claim." Hernandez-Moran, 408 F.3d at 499 (quotation omitted). "We review constitutional challenges to immigration proceedings *de novo*." Shoaira v. Ashcroft, 377 F.3d 837, 842 (8th Cir. 2004).

---

[1] Because Habchy did not directly appeal the IJ's denial of his initial motion to reopen to the Board, we review the denial of that motion insofar as it is relevant to whether the IJ properly denied his subsequent motion to reconsider that decision. De Jimenez, 370 F.3d at 789 ("[A]lthough we are not directly reviewing the [Board]'s order denying petitioner's motion to reopen, our review of the denial of the motion to reconsider may require us to consider the validity of that order.").

-4-

Habchy makes three broad claims on this appeal. First, he argues that the Board abused its discretion in failing to reopen his case because his counsel's failure to notify him of the hearing was an "exceptional circumstance" that warranted rescission of his in absentia removal order under 8 U.S.C. § 1229a(b)(5)(C), (e)(1). Habchy also argues that these same facts rendered his removal proceedings fundamentally unfair, and thus deprived him of due process. Finally, he argues that the Board abused its discretion in denying his later motion to reopen on the basis of changed country conditions. We examine each of these claims in turn.

A. Abuse of Discretion in Denying Habchy's Motion to Reconsider

Habchy first argues that the Board erred in upholding the IJ's denial of his motion to reconsider the IJ's refusal to reopen his case on the basis of ineffective assistance of counsel. With regard to removal orders entered in absentia, aliens are allowed to file one motion to reopen removal proceedings within 180 days of the order of removal. 8 C.F.R. § 1003.23(b)(4)(ii). They are also allowed to file one motion to reconsider within thirty days of a final order of removal. 8 C.F.R. § 1003.23(b)(1). Motions to reopen must state new, material facts; motions to reconsider must "specify[] the errors of fact or law in the Immigration Judge's prior decision." 8 C.F.R. § 1003.23(b)(2), (3). Ineffective assistance of counsel can constitute an "exceptional circumstance" warranting rescission of an in absentia removal order. See In re Grijalva-Barrera, 21 I. & N. Dec. 472, 474 (B.I.A. 1996); see also 8 U.S.C. § 1229a(b)(5)(C)(i), (e)(1) (authorizing the rescission of an in absentia removal order when "exceptional circumstances" caused the alien's failure to appear); Asaba v. Ashcroft, 377 F.3d 9, 11 n.4 (1st Cir. 2004) (recognizing that the Board's interpretation of "exceptional circumstances" includes ineffective assistance of counsel); Reyes v. Ashcroft, 358 F.3d 592, 596 (9th Cir. 2004) (same). This does not excuse aliens from following proper procedures for proving these exceptional circumstances, however, and the IJ retains the discretion to refuse to reopen the case. 8 C.F.R. § 1003.23(b)(3); Asaba, 377 F.3d at 11.

In Lozada, as noted above, the Board specified the three procedural requirements for motions to reopen on the basis of ineffective assistance of counsel. First, the movant must support his claim with an affidavit alleging facts relevant to the ineffective assistance. Lozada, 19 I. & N. Dec. at 639. Second, the movant must inform the former counsel of the allegation and give her an opportunity to respond. Id. Finally, if the ineffective assistance would amount to a violation of legal or ethical responsibilities, the movant must show whether he has filed a complaint with the "appropriate disciplinary authorities regarding such representation, and if not, why not." Id. The Board considers these further requirements for such motions "necessary if we are to have a basis for assessing the substantial number of claims of ineffective assistance of counsel that come before the Board." Id. We have upheld the Board's application of Lozada to these motions. See Hernandez-Moran, 408 F.3d at 499.

Habchy's initial motion to reopen was timely, and included the new, material facts of his counsel's allegedly ineffective assistance. It did not, however, meet the requirements of Lozada; as the IJ noted, Habchy did not include an affidavit relating the relevant facts or any evidence that Habchy had filed a complaint with bar authorities, nor any explanation as to why he had not. His motion to reconsider the decision regarding the motion to reopen was untimely in that he filed it 137 days after the IJ denied the motion to reopen, well beyond the thirty-day time limit for motions to reconsider.

Habchy acknowledges these facts and applicable law, but nonetheless argues that the Board erred in rejecting his motion to reconsider as untimely. Specifically, he argues that (1) the lack of notice due to his counsel's ineffective assistance deprived him of an opportunity to present his case, (2) the IJ should not have applied the Board's allegedly Byzantine procedural requirements to his initial motion to reopen considering that he filed it pro se, and (3) the IJ should have considered his motion to reconsider as a motion to reopen. Under this argument, Habchy contends that the IJ should have handled his claim in one of four ways. First, he could have

relaxed the <u>Lozada</u> requirements for Habchy's initial motion to reopen and granted it on the basis of substantial compliance. Second, the IJ could have construed Habchy's motion to reconsider as a supplement to his original, timely-filed motion to reopen. Third, he could have found that the two motions combined to form a single <u>Lozada</u>-compliant motion to reopen on the date that Habchy filed the second motion, which would have been timely filed if the IJ tolled the period between the filing of Habchy's initial motion to reopen and the IJ's ruling that this initial motion did not comply with <u>Lozada</u>. Fourth, the IJ could have simply found that Habchy filed two motions to reopen and applied equitable tolling to both the time and numerical limitations on his second motion. The IJ's failure to follow any of these options, according to Habchy, constituted an abuse of discretion. We address Habchy's four proposed courses of action below.

### 1. Application of <u>Lozada</u> to Habchy's Initial Motion to Reopen

Habchy makes a reasonable argument that the IJ should not have applied <u>Lozada</u> mechanistically, and some courts agree. <u>See, e.g.</u>, <u>Castillo-Perez v. INS</u>, 212 F.3d 518, 525 (9th Cir. 2000) ("[T]he <u>Lozada</u> requirements are not sacrosanct."). Our circuit has not ruled on whether a strict application of those requirements could constitute an abuse of discretion in certain circumstances, and we need not do so here. At the very least, an IJ does not abuse his discretion in requiring substantial compliance with the <u>Lozada</u> requirements when it is necessary to serve the overall purposes of <u>Lozada</u>—that is, to "discourag[e] baseless allegations" and provide a basis for determining the merits of an ineffective-assistance claim when those merits are not evident from the record. <u>Lozada</u>, 19 I. & N. Dec. at 639; <u>cf.</u> <u>Rodriguez-Lariz v. INS</u>, 282 F.3d 1218, 1227 (9th Cir. 2002) (noting that the <u>Lozada</u> factors are not rigidly applied "when the record shows a clear and obvious case of ineffective assistance"); <u>Castillo-Perez</u>, 212 F.3d at 526 (refusing to require <u>Lozada</u> compliance when "[t]he hearing record and briefing . . . make[] it perfectly clear" that an alien received ineffective assistance of counsel).

Here, the hearing record is ambiguous. The mere fact that Habchy was absent does not present a prima facie case of ineffective assistance, especially because Habchy's lawyer appeared and actually asked for a continuance to locate him. Habchy's motion to reopen makes a prima facie case, but it also leaves some doubt as to where the blame for his lack of notice lies. In particular, there is some question as to whether the lawyer included a copy of the notice with the rest of the documents she sent to Habchy prior to his hearing (as she alleges she ordered her secretary to do) and Habchy simply misplaced or ignored it, or whether the lawyer or her secretary failed to send the notice, as Habchy alleges. Substantial compliance with Lozada under these circumstances would have included some evidence that Habchy lodged a formal complaint against the lawyer, or at least some explanation why Habchy did not take such action, because it would have added strength to his allegations that the lack of notice was attributable to his lawyer's negligence rather than his own. Thus, we find that the IJ did not abuse his discretion in denying Habchy's initial motion to reopen for failure to comply with Lozada.

## 2. Characterization of the Motion to Reconsider

We also reject Habchy's proposition that the IJ abused his discretion in failing to characterize his motion to reconsider as a mere supplement to his timely but deficient motion to reopen. The IJ was free to interpret it in that fashion, of course, and either he or the Attorney General could have reopened Habchy's immigration proceedings on their own motion at any time. 8 C.F.R. § 1003.23(b)(1). That may have been the most appropriate course of action in this case. But that discretion lies with the government, and the asylum regulations gave Habchy no explicit right to supplement his motion. Even if we were to imply one, the IJ was well within his discretion to refuse to allow Habchy to supplement that motion when his purported attempt to do so came more than six months after filing the motion to reopen and more than four months after the IJ made his decision on that motion.

### 3. Equitable Tolling

Habchy's arguments for equitable tolling—whether for tolling of time limitations alone (if the IJ should have construed both motions as a single, Lozada-compliant motion to reopen at the time he filed the latter motion) or for tolling of both time and numerical limitations (if the IJ should have construed his motion to reconsider as a second motion to reopen)—raise a number of issues of first impression for this circuit. For example, Habchy would have this court decide whether the Board may err in construing a motion in the same manner as the movant titled it, whether the Board must apply equitable tolling of time and numerical limitations upon motions to reopen in some situations, and whether an alien's choice to proceed pro se dictates the stringency with which the Board may apply its procedural requirements. We need not reach those issues here because Habchy's claim fails in any event; the facts of his case would not warrant equitable tolling.

In those circuits that recognize the "sparingly invoked doctrine" of equitable tolling for ineffective-assistance-of-counsel claims, Jobe v. INS, 238 F.3d 96, 100 (1st Cir. 2001) (en banc) (quotation omitted), aliens must exercise due diligence in "discovering the deception, fraud, or error" giving rise to the ineffective assistance of counsel. Iturribarria v. INS, 321 F.3d 889, 897 (9th Cir. 2003). In cases where the equitable-tolling argument has prevailed, a court has excused an alien's tardy motion to reopen because of his attorneys' fraud and misrepresentations regarding the status of his case during the time in which he could have filed such a motion, Borges v. Gonzales, 402 F.3d 398, 405-07 (3d Cir. 2005), or the attorneys' active concealment of their own ineffectiveness. Iturribarria, 321 F.3d at 898-99. Habchy's case presents a much different fact pattern. Here, Habchy clearly knew of the allegedly ineffective assistance of his counsel almost immediately after the IJ ordered him removed in absentia; he filed his initial motion to reopen within a month afterward. He thus cannot argue that the time limitations to file motions to reopen should not apply here. He actually filed a motion to reopen well within those limits.

The crux of Habchy's argument, then, is that he lost an opportunity to reopen his case because of his own ineffectiveness when proceeding pro se, which led to his initial failure to file a Lozada-compliant motion to reopen. Thus, Habchy essentially contends that we should toll the time and numerical limitations upon motions to reopen from the time of the removal order until the time he abandoned his pro se strategy and obtained new counsel. The Ninth Circuit has allowed tolling of time and numerical limits even after an alien files a post-hearing motion. Rodriguez-Lariz, 282 F.3d at 1223-26. In that case, however, the court noted that the alien received ineffective assistance of counsel for both his initial claim *and* in filing his first post-hearing motion. Id. Thus, because Rodriguez-Lariz's ineffective assistance had resulted both in an order of removal and in the waste of his one permissible post-hearing motion, and because the alien could not have reasonably discovered the ineffective assistance until after a motion to reopen would be both time- and number-barred, the court required the Board to apply equitable tolling. Id.

Here, by contrast, Habchy does not contend that he received ineffective assistance in filing his motion to reopen; indeed, he opted to waive his statutory right to counsel and claims to have received no assistance at all. We sympathize with the plight of an alien who attempts to trudge through the morass of immigration law without legal counsel, particularly after he believes his first lawyer deprived him of an opportunity to present his case. But we do not believe it is an abuse of discretion when the Board refuses to wholly overlook procedural requirements merely because an alien makes the choice to file a motion pro se. Cf. United States v. Three Parcels of Real Property, 43 F.3d 388, 392 (8th Cir. 1994) (holding, in the forfeiture context, that "[p]rocedural default is not excused merely because claimants are proceeding pro se"); Ellis v. Lockhart, 875 F.2d 200, 202 (8th Cir. 1989) (holding, in the habeas context, that pro se litigants must follow procedural requirements, even though "[m]any lawyers (ourselves among them) have from time to time had difficulty probing all the intricacies of appellate and post-conviction practice"). While the IJ

has a "duty to fully develop the record" as to relevant facts when an alien appears pro se at an asylum hearing, Al Khouri v. Ashcroft, 362 F.3d 461, 465 (8th Cir. 2004), it does not follow that the IJ also has a duty to suspend relevant law when an alien makes a post-hearing motion pro se.

Furthermore, even if we were otherwise disposed to find that the Board should have applied numerical tolling and allowed Habchy to file a second motion to reopen that cured the deficiencies of the first, the tolling of time limitations would not be appropriate in this case. "In general, a filing period may be equitably tolled if the applicant seeking such relief demonstrates that he has exercised due diligence in pursuing his case during the period he seeks to toll," Kanyi v. Gonzales, 406 F.3d 1087, 1090 (8th Cir. 2005), and Habchy may have reasonably believed that it was unnecessary to correct any Lozada deficiencies while his first motion to reopen was still pending before the IJ. Even assuming that to be true, Habchy also waited more than four months after the IJ's decision on his motion to reopen—a decision that spelled out the precise deficiencies of that motion under Lozada—to file his second motion. Tolling is an equitable doctrine, and it is not available to those who sleep on their rights. See Iavorski v. INS, 232 F.3d 124, 134 (2d Cir. 2000). Given the length of time at issue and the fact that Habchy has offered no explanation for this delay, we find that he failed to exercise the due diligence necessary to justify tolling the time limitations on motions to reopen. The Board did not abuse its discretion in finding that his second motion claiming ineffective assistance of counsel was time-barred.

Thus, even if the failure of Habchy's counsel to inform him of the hearing date and location amounted to ineffective assistance, we find under the facts of this case that his failure to file a Lozada-compliant motion to reopen within the statutory deadline bars his claim for relief on the basis of "exceptional circumstances."

-11-

B. Due Process

The Fifth Amendment guarantees due process to aliens in deportation proceedings, Reno v. Flores, 507 U.S. 292, 306 (1993), and some circuits have held that ineffective assistance of counsel may violate these due-process rights. See, e.g., Xu Yong Lu v. Ashcroft, 259 F.3d 127, 131-32 (3d Cir. 2001); Magallanes-Damian v. INS, 783 F.2d 931, 933 (9th Cir. 1986) (finding that ineffective assistance of counsel may violate the Fifth Amendment when that ineffectiveness results in fundamentally unfair proceedings). This court has squarely rejected an absolute constitutional right to effective assistance of counsel with respect to asylum claims, see Obleshchenko v. Ashcroft, 392 F.3d 970, 971 (8th Cir. 2004), but we have recognized a due-process right to fundamentally fair removal proceedings. See Al Khouri, 362 F.3d at 464 ("The Fifth Amendment's due process clause mandates that removal hearings be fundamentally fair."). Because Habchy's due-process claim rests not only upon his counsel's ineffective assistance before the IJ but also upon his lack of notice (due to both the Board's and his own misplaced reliance upon his lawyer to provide him with notice) and the allegedly unfair procedural hurdles blocking the reopening of his case, we assume without deciding that Habchy's appeal implicates a cognizable due-process allegation of fundamentally unfair removal proceedings.

For many of the same reasons that the Board did not abuse its discretion in refusing to reopen Habchy's case, we find that the Board and the IJ did not violate Habchy's due-process rights. Habchy had an opportunity for a hearing, and, if he did not attend due to circumstances beyond his control (such as his counsel's failure to give him notice), he had one opportunity to prove those circumstances in the manner the Board has required since it decided Lozada almost twenty years ago. By filing a Lozada-deficient motion, Habchy failed to take full advantage of that opportunity. The Lozada requirements served a valuable purpose in this particular case, and while Habchy's failure to satisfy those requirements was understandable, it was also avoidable. The IJ did nothing to mislead Habchy regarding the nature of his rights,

-12-

cf. Saakian v. INS, 252 F.3d 21, 26 (1st Cir. 2001), and due process did not require the IJ to remake or ignore the Lozada requirements solely because Habchy lacked knowledge of them. Nor, under the facts of this case, did due process require the IJ to relax time and numerical limitations and consider an untimely second motion purporting to conform to those requirements. Habchy had a right to be heard on his asylum claim and, when he failed to exercise it, he had a reasonable opportunity to prove that his failure to do so was excusable. Habchy may not have received extraordinary process, but it was not less than what he was due under the Fifth Amendment.

    C. Changed country conditions

    Habchy also argues that the Board abused its discretion in refusing to reopen Habchy's case on the basis of changed country conditions in Lebanon between his 2000 hearing and his 2003 motion to reopen on that basis. He points to the State Department's designation of Hizballah as a foreign terrorist organization, reports showing the continued inability or refusal of the Lebanese government to control that group, the authorized departure of several employees from the U.S. embassy in Beirut due to the risk of terrorism, and evidence of politically motivated attacks and arrests of members of the Lebanese Forces and their supporters.

    We review denials of motions to reopen for abuse of discretion. Strato v. Ashcroft, 388 F.3d 651, 654 (8th Cir. 2004). The Board may deny a motion to reopen on the basis of new evidence on any of three grounds: "failure to establish a prima facie case for the relief sought, failure to introduce previously unavailable, material evidence, and a determination that even if these requirements were satisfied, the movant would not be entitled to the discretionary grant of relief sought." Khalaj v. Cole, 46 F.3d 828, 834 (8th Cir. 1995). In this case, the Board denied Habchy's motion on the second of those three grounds, finding that the evidence he presented

-13-

did not show that Hizballah posed a greater threat to Habchy in 2003 than it had in 2000.[2]

While the country reports show that Lebanese citizens with Habchy's religious and political affiliations were vulnerable to persecution, the Board was justified in deciding that any change in country conditions was not material to Habchy's asylum claim. The country reports do not indicate any significant upsurge in violence, growth in the power and influence of Hizballah, or major increase in the risk to Lebanese Christians at the hands of that group during the time frame at issue in this case. Cf. Dandan v. Ashcroft, 339 F.3d 567, 576 (7th Cir. 2003) (noting that the situation in Lebanon, while unstable, was not "markedly different" in 2003 than it was in 2000). The Attorney General, acting through the Board, has "broad discretion in deciding whether to grant or deny" motions to reopen, Strato, 388 F.3d at 654, and we find that it did not abuse that discretion here.

We note that today's decision does not necessarily foreclose all avenues of relief for Habchy. At oral argument, Habchy's counsel made reference to the 2006 escalation of violence and tension involving Hizballah and Israel. The government conceded that there is no legal obstacle preventing Habchy from filing a successive motion to reopen on the basis of further changes in country conditions because such motions do not carry the time and numerical limitations of motions to reopen on other

_____

[2] In its decision, the Board also seemed to place some emphasis upon Habchy's previous failure to appear for his asylum hearing, noting that he "abandoned his opportunity to pursue asylum based upon his fear of Hizballah when he failed to appear at his scheduled hearing." We fail to see why Habchy's absence from his 2000 hearing should impact his right to reopen his case at a later date based on new evidence of changed country conditions, particularly when subsequent proceedings show he had absolutely no intent to abandon his opportunity to pursue an asylum claim. Therefore, we review only the primary ground for the Board's decision: that Habchy failed to establish a change in conditions from 2000 to 2003 that would materially affect his eligibility for asylum.

-14-

grounds, 8 C.F.R. § 1003.2(c)(3)(ii), and Habchy's counsel indicated his intent to do so. The government also assured this court that the Board would not deny such a motion solely on the ground that Habchy would have qualified for asylum in 2000 had he attended his original hearing. Thus, Habchy may attempt to prove that conditions in Lebanon have changed from 2000 to the present in a way that materially affects his risk of persecution on a protected ground. If the Board grants this motion, Habchy will receive the same opportunity to present his asylum claim that he seeks in this petition.

## III. CONCLUSION

For the foregoing reasons, we deny the petition for review.

_____