# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 07-3428

_____

| | | |
|---|---|---|
| Boutros Chafic Habchy, | * | |
| | * | |
| Petitioner, | * | |
| | * | Petition for Review of an |
| v. | * | Order of the Board of |
| | * | Immigration Appeals. |
| Mark Filip,[1] | * | |
| Acting Attorney General | * | |
| | * | |
| Respondent. | * | |

_____

Submitted: September 26, 2008
Filed: January 26, 2009

_____

Before RILEY, BRIGHT, and MELLOY, Circuit Judges.

_____

MELLOY, Circuit Judge.

Boutros Chafic Habchy, a native and citizen of Lebanon, petitions for review of the decision of the Board of Immigration Appeals ("BIA") to deny his petition to reopen his asylum case on the basis of changed country conditions in Lebanon. He claims that the BIA abused its discretion in refusing to grant the motion to reopen. We vacate the BIA's decision and remand for new findings.

_____

[1]Pursuant to Federal Rule of Appellate Procedure 43(c)(2), Acting Attorney General Mark Filip is automatically substituted for former Attorney General Michael B. Mukasey as Respondent in this case.

## I.

This is not the first time that Habchy has appealed an adverse administrative decision to this court, and the procedural history of this case is lengthy. Habchy entered the United States at the Miami International Airport in 2000. Upon arriving without proper documentation, Habchy immediately requested asylum. Habchy claimed that he had suffered past persecution at the hands of the political and paramilitary organization Hizballah, which had detained him, tortured him, and accused him of being an Israeli collaborator. Habchy also stated that he feared future persecution on the basis of his religion and his political beliefs, whether real or imputed.

Habchy's asylum-merits hearing before an Immigration Judge ("IJ") was scheduled for November 21, 2000, but Habchy failed to appear. As a result, the IJ ordered him removed in absentia. Habchy filed a pro se motion to reopen his asylum petition on the basis of ineffective assistance of counsel, claiming that his attorney had failed to notify him of the hearing date. The IJ denied this motion, and Habchy did not appeal.

Habchy thereafter obtained different counsel and filed a motion with the IJ to reconsider the IJ's initial denial of the motion to reopen. The IJ denied the motion to reconsider. This time, Habchy appealed. On March 7, 2003, the BIA affirmed the IJ's decision to deny the motion to reconsider, finding the petition was untimely. Habchy proceeded to file a new motion to reopen with the BIA, this time based on changed country conditions in Lebanon between 2000 and 2003. On July 23, 2003, the BIA denied the motion on the merits.

Habchy filed a petition for habeas corpus on May 11, 2005. The petition was transferred to this court. In September 2006, Habchy argued before this court that the BIA erred in affirming the IJ's denial of the motion to reconsider and further erred in refusing to reopen his asylum case on the basis of changed country conditions. In

*Habchy v. Gonzales*, 471 F.3d 858 (8th Cir. 2006), this court affirmed the BIA's denial of both motions. We noted therein, however, that nothing precluded Habchy from filing another motion to reopen based on further changes in country conditions due to the ongoing Lebanese–Israeli conflict. *Id.* at 867–68.

Following this court's decision, on September 17, 2007, Habchy filed with the BIA another motion to reopen based on changed country conditions. This new motion was premised, in part, on the military conflict between Lebanon and Israel in July and August of 2006. As a Lebanese Christian and perceived supporter of Israel, Habchy claimed that the escalation of tensions between Hizballah, Israel, and the Lebanese government over the kidnapping of Israeli soldiers in July 2006 increased the threat of persecution to a degree that constituted a material change and warranted reopening his asylum proceedings. On October 4, 2007, the BIA denied the motion on the merits. An appeal from the BIA's denial of this latest motion is currently before this court.

## II.

A. *Standard of Review*

We review the BIA's denial of a motion to reopen for abuse of discretion. *Habchy*, 471 F.3d at 861. The BIA abuses its discretion where "a decision is without rational explanation, departs from established policies, invidiously discriminates against a particular race or group, or where the agency fails to consider all factors presented by the alien or distorts important aspects of the claim." *Id.* at 861–62 (citation and quotation omitted). The Code of Federal Regulations dictates when the agency may grant a motion to reopen. *See* 8 C.F.R. § 1003.2. To qualify for a motion to reopen based on changed circumstances, the petitioner must "state . . . new facts . . . supported by affidavits or other evidentiary material," and the facts must be material to the claim for relief and unavailable and undiscoverable at the time of the former hearing. *Id.* § 1003.2(c)(1).

-3-

B. *Denial of the Motion to Reopen*

As set forth in his initial asylum application and the present motion to reopen, Habchy claims he will be persecuted on two grounds—political opinion, whether real or imputed, and religious belief. Specifically, Habchy asserts that "[h]e was accused of being an Israeli collaborator and was severely beaten by the Hizballah and Syrian occupying forces as a result of his political activity and religious background." In addition to past persecution, Habchy claims he will face similar treatment on the same basis in the future.

The BIA abused its discretion in denying Habchy's latest motion to reopen insofar as it failed to consider the entirety of Habchy's claim for relief when determining whether there had been a material change in country conditions in Lebanon. *See Habchy*, 471 F.3d at 861–62. In denying the motion, the BIA failed to analyze Habchy's evidence in light of his claim of persecution based on political opinion, whether real or imputed, and in light of his particular circumstance. And unlike in its 2003 opinion, the BIA made no indication here that it even considered his political affiliation. Instead, the agency erroneously confined its review to whether the new evidence Habchy presented showed an increased risk of persecution based on his religion such that reopening was warranted.

In its opinion, the BIA characterized Habchy's motion to reopen as solely resting on the deterioration of "conditions faced by Lebanese Christians." It found that the harm Habchy feared was too generalized to serve as a material change in country conditions, stating that while the "continuing state of economic and political crisis has led to insecurity among Lebanese Christians, the situation has affected all sectors of Lebanese society." To support this determination, the BIA cited to portions of Habchy's evidence that indicated both Muslim and Christian communities had been the targets of bombings and attacks. In sum, the BIA concluded that Habchy's proffered evidence of persecution did not "show an increased risk of persecution to Lebanese Christians since the Immigration Judge's decision." Importantly, we do not

believe that, on its face, Habchy's claim based on his political opinion is wholly incredible or without merit, and, as such, we may not overlook the BIA's omission.

To be eligible for asylum, Habchy would have to establish at a hearing before an IJ that he is unwilling or unable to return to Lebanon because of persecution or a well-founded fear of persecution based upon his "race, religion, nationality, membership in a particular social group, or political opinion." 8 U.S.C. § 1158(b)(1)(B)(i). Persecution on the basis of any one of these grounds thus forms an independent and sufficient statutory ground for relief. A "general state of unrest," however, is "typically insufficient to qualify as persecution." *Al Yatim v. Mukasey*, 531 F.3d 584, 588 (8th Cir. 2008) (citing *Mohamed v. Ashcroft*, 396 F.3d 999, 1003 (8th Cir. 2005) for the proposition that "[h]arm arising from general conditions such as anarchy, civil war, or mob violence will not ordinarily support a claim of persecution"). Thus, "the harm suffered must be particularized to the individual rather than suffered by the entire population." *Mohamed*, 396 F.3d at 1003.

The change upon which Habchy bases his motion to reopen is the conflict between Lebanon and Israel that occurred during July and August 2006. As discussed in the 2006 U.S. State Department Country Report ("Report"), which Habchy has presented as evidence of changed country conditions in support of his motion, this conflict started when Hizballah militants entered Israel from Lebanese territory and kidnapped and killed three Israeli soldiers. Israeli military forces entered Lebanese territory in response and instituted a bombing campaign.

Habchy asserted in his motion that the Report "gives extensive corroboration to the increased danger to Israeli supporters and Christians of Lebanon." Because of the increased hostility toward non-Muslims in the region after the bombing and invasion, Habchy maintains that he is at a greater risk of harm based on his religious views. He also maintains that the increased hatred and distrust of Israel stemming from the conflict further jeopardizes his life. Because of his prior political affiliation with the Lebanese Forces, a Christian political party that opposes Hizballah, as well

as his perceived allegiance to Israel because of his association with the Lebanese Forces, Habchy believes that if returned to Lebanon he would be targeted and harmed.

Habchy's evidence of changed country conditions is unlike that which he presented in support of his previous motion to reopen, where we noted that "[t]he country reports do not indicate any significant upsurge in violence" or "growth in the power and influence of Hizballah." *Habchy*, 471 F.3d at 867. Here, the Report clearly indicates hostilities between Lebanon, Hizballah, and Israel had increased since the time Habchy first filed for asylum and since his last motion to reopen. The Report further highlights an increase in "strong rhetoric against Israel" and abuse of Israeli citizens after and during the conflict within Lebanon. Habchy also submitted as evidence numerous newspaper articles detailing the increase in sectarian violence following the conflict.

Habchy is not merely seeking to reopen his asylum claim because of a generalized fear of persecution that any and all Christians or even former Lebanese Forces members could claim. Rather, as Habchy stated in an affidavit in support of his asylum application and in his motion to reopen, during his time in the Lebanese Forces he served in its secret-service branch and was responsible for passing intelligence about Hizballah and Syria to the party leaders, and, having discovered his roll, Hizballah detained him, tortured him, and accused him of being an Israeli collaborator. He thus alleges that he is likely to suffer persecution because of his particular circumstance—i.e., his former political affiliation and his perceived allegiance to Israel—not only because of the general increase in violence.

Because of his particular allegations, this claim is different from that in *Al Yatim*. There, we found that the BIA did not abuse its discretion in refusing to grant a motion to reopen where the petitioners, who sought relief based on their identity as Christians living in the Palestinian territory, failed to establish a material change in country conditions. *Al Yatim*, 531 F.3d at 591. Our conclusion rested, in part, on the fact that the petitioners did "not explain[] how the [election of Hamas] would impact

them specifically, as opposed to creating a generalized increase in regional hostilities." *Id.*; *see also Harchenko v. INS*, 379 F.3d 405, 410 (6th Cir. 2004) (holding the BIA did not abuse its discretion in denying a motion to reopen when the petitioner presented "a long list of newspaper articles and references to the . . . State Department Country Reports" but failed "to explain how these developments would affect [the petitioner]" and "demonstrate the 'individualized' fear of persecution required for asylum").

Given Habchy's particular background, an increase in hostility against Israel in Lebanon could affect Habchy beyond the generalized increase in harm faced by the population as a whole. Regardless of whether this is actually the case, the BIA had an obligation to consider the evidence Habchy presented in light of all of his claims. *See Barragan-Verduzco v. INS*, 777 F.2d 424, 426 (8th Cir. 1985) ("[The agency has] no duty to write an exegesis on every contention," but it is required to "consider the issues raised, and announce its decision in terms sufficient to enable a reviewing court to perceive that it has heard and thought and not merely reacted." (internal quotation omitted)). While it is well established that the BIA has broad discretion to grant or deny a motion to reopen, if it does not articulate a reasoned basis for rejecting the motion or fails to consider all the aspects of the petitioner's claim, it has abused its discretion. *Habchy*, 471 F.3d at 861–62. The BIA should have addressed whether, in light of Habchy's particular situation, the new evidence established a materially greater risk of persecution based on his political opinion.

The BIA thus abused its discretion in failing even to acknowledge the substantive issue of an increased risk of persecution based on political opinion, whether real or imputed. *See Mejia v. Ashcroft*, 298 F.3d 873, 880 (9th Cir. 2002) (holding that the BIA abused its discretion in denying a motion to reopen when it failed to consider the argument before it); *Zheng v. BIA*, 154 F. App'x 265, 266–67 (2d Cir. 2005) (unpublished) (finding an abuse of discretion where the BIA did not

directly address a claim of persecution on the ground before it but, instead, focused on the original application for asylum premised on a different ground).

Notably, we do not express an opinion as to whether the Lebanese–Israeli conflict presents an increased risk of persecution such that reopening is definitively warranted. *See generally INS v. Ventura*, 537 U.S. 12, 16–17 (2002) (per curiam) (stating that a court of appeals does not generally have the power to review de novo an agency's decision and that "the proper course, except in rare circumstances, is to remand to the agency for additional investigation or explanation"). The BIA, however, had an obligation to consider the evidence of changed country conditions that Habchy presented in light of each aspect of his claim of persecution and must do so on remand.

## III.

For the foregoing reasons, we remand to the BIA to consider Habchy's evidence of changed country conditions as it relates to his claim of future persecution based on his political opinion, whether real or imputed, and, whether, in light of his particular circumstance, his evidence establishes a material change in country conditions such that reopening in warranted.

The decision of the BIA is vacated, and the case is remanded to the BIA for further proceedings consistent with this opinion.

_____