# United States Court of Appeals
## For the Eighth Circuit

_____

No. 19-3356
_____

Ahmed Abdulkadir Mohamed

*Petitioner*

v.

William P. Barr, Attorney General of the United States

*Respondent*
_____

Petition for Review of an Order of the
Board of Immigration Appeals
_____

Submitted: October 22, 2020
Filed: December 23, 2020
_____

Before BENTON, SHEPHERD, and KELLY, Circuit Judges.
_____

SHEPHERD, Circuit Judge.

Ahmed Mohamed, a native and citizen of Somalia, petitions for review of an order of the Board of Immigration Appeals (BIA) upholding the decision of an immigration judge (IJ), which denied Mohamed's motion to reopen removal proceedings based on changed country conditions. For the following reasons, we deny the petition for review.

I.

Mohamed was admitted to the United States as a conditional lawful permanent resident on December 26, 2001, based on his marriage to a United States citizen. That status was terminated on April 6, 2006, because Mohamed failed to appear for an interview, which was scheduled for the purpose of removing the conditions on his permanent residence. On August 13, 2007, the Department of Homeland Security (DHS) initiated removal proceedings against Mohamed based on the termination of his lawful status. Mohamed failed to appear for his first scheduled hearing, but an IJ found inadequate proof of service and administratively closed the proceedings. DHS moved to recalendar the proceedings, and a master calendar hearing (a preliminary hearing for removal proceedings) ultimately took place on September 21, 2011. At that hearing, the IJ ordered Mohamed removed *in absentia* based on his failure to appear at the prior hearing. On January 10, 2017, Mohamed filed a motion to reopen and rescind the *in absentia* order of removal. The IJ denied the motion, and Mohamed did not appeal the decision to the BIA.

On August 2, 2018, more than seven years after the 2011 final order of removal, Mohamed filed a second motion to reopen and sought asylum; withholding of removal; and protection under the Convention Against Torture (CAT). Mohamed sought this relief based on changed country conditions in Somalia: an expressly stated exception to the general 90-day time frame to file a motion to reopen removal proceedings. See 8 U.S.C. § 1229a(c)(7)(C). Mohamed alleged that he would be targeted by al-Shabaab and ISIS-Somalia because of his opposition to the establishment of an authoritarian state based on Sharia law; his religion as a moderate Muslim who opposes the extreme views held by both groups; and his perceived status as an American or Americanized Somali. He argued that he would be readily identified as an Americanized Somali due to his presence on Immigration and Customs Enforcement's (ICE) failed December 2017 repatriation flight in which

-2-

ICE attempted to remove 92 Somalis from the United States.[1]  Mohamed further alleged that al-Shabaab had more recently infiltrated the Somali government and had the increased capacity and power to carry out its threats towards individuals like Mohamed.

On April 24, 2019, the IJ denied Mohamed's motion to reopen in a written decision.[2]  The IJ first discussed the various bars that Mohamed faced: the departure bar, under 8 C.F.R. § 1003.23(b)(1); and the time and number bars, under 8 U.S.C. § 1229a(b)(5)(C), (c)(6), (c)(7), and the accompanying federal regulations.[3]  The IJ found that Mohamed's motion was barred by each of the provisions.  The IJ then moved on to Mohamed's claim of changed country conditions, recognizing that if sufficiently established, the time and numerical bars would not apply.  The IJ determined that the conditions in Somalia had not materially changed from the date of Mohamed's 2011 removal order; that al-Shabaab was participating in the same type of violence prior to 2011 as Mohamed had alleged in his motion; that al-Shabaab had previously garnered significant governmental power; and that

---

[1]We detailed the events of this incident in <u>Shire v. Barr</u>, 967 F.3d 722, 724 n.1 (8th Cir. 2020).

[2]Mohamed's motion was originally considered by a separate IJ.  That IJ summarily dismissed the motion, but the BIA remanded the proceedings for a fully developed and reasoned decision.  The same IJ issued a second summary decision denying Mohamed's motion, which the IJ vacated shortly after discovering a conflict of interest.  The motion was reassigned to a second IJ whose decision is now at issue.

[3]The so-called "departure bar" prevents petitioners from reopening their removal proceedings when they have, subsequent to filing, departed from the United States either voluntarily or involuntarily.  The IJ found that this bar applied to Mohamed because he sought asylum in Canada subsequent to filing his first motion to reopen.  The "time bar" requires that petitioners file a motion for reconsideration or a motion to reopen within 30 and 90 days, respectively, of a final administrative order.  If the petitioner was removed *in absentia* and can demonstrate "exceptional circumstances," the petitioner can file a motion to reopen up to 180 days after such order.  Finally, the "numerical bar" limits petitioners to only one motion to reconsider and one motion to reopen.

Mohamed had no particular notoriety due to his presence in ICE's December 2017 repatriation attempt. Accordingly, the IJ denied Mohamed's motion to reopen.

Mohamed appealed the decision to the BIA, which issued a decision on October 4, 2019. The BIA agreed that Mohamed's motion was both time- and number-barred but refrained from making any determinations concerning the application of a departure bar. The BIA found that the IJ did not clearly err in its determinations concerning Somalia's changed country conditions and upheld the IJ's decision, denying Mohamed's motion to reopen. Mohamed then filed a petition for review in this Court on October 31, 2019. He subsequently filed a motion for emergency stay of removal, which this Court denied, and he was deported to Somalia on December 5, 2019.

## II.

Mohamed asserts that the BIA erroneously affirmed the IJ's denial of the motion to reopen removal proceedings based on changed country conditions pursuant to 8 U.S.C. § 1229a(c)(7)(C) and 8 C.F.R. § 1003.23(b)(1), (4)(i). Specifically, Mohamed asserts that the BIA failed to consider (1) al-Shabaab's increase in power from 2011 to 2018; (2) ISIS-Somalia's emergence and growing violence from 2011 to 2018; and (3) the impact of Mohamed's personal characteristics on changed country conditions.

Generally, "[a]n alien may file *one* motion to reopen proceedings under [8 U.S.C. § 1229a]," 8 U.S.C. § 1229a(c)(7)(A) (emphasis added), and such motion must be filed "within *90 days* of the date of entry of a final administrative order of removal," id. § 1229a(c)(7)(C)(i) (emphasis added). Accordingly, Mohamed's motion to reopen is number- and time-barred, as it was his second motion and filed more than seven years after the final administrative order. However, these bars do not apply when the motion to reopen is "based on changed country conditions arising in the country of nationality or the country to which removal has been ordered, if [the] evidence [of such changed country conditions] is material and was not available

-4-

and would not have been discovered or presented at the previous proceeding." Id. § 1229a(c)(7)(C)(ii); 8 C.F.R. § 1003.23(b)(1), (4)(i). The petitioner bears the burden of making a prima facia case that demonstrates "a change in country conditions since his initial hearing that materially affects his claim to relief." Sharif v. Barr, 965 F.3d 612, 618 (8th Cir. 2020) (citing Zeah v. Lynch, 828 F.3d 699, 704 (8th Cir. 2016)).

"We review decisions of the [BIA] denying motions to reopen or reconsider for abuse of discretion." Shire v. Barr, 967 F.3d 722, 725 (8th Cir. 2020) (quoting Habchy v. Gonzales, 471 F.3d 858, 861 (8th Cir. 2006)). The BIA abuses its discretion "where a decision is without rational explanation, departs from established policies, invidiously discriminates against a particular race or group, or where the agency fails to consider all factors presented by the alien or distorts important aspects of the claim." Id. (citation omitted). "Though we ordinarily review only the BIA's decision, 'we also review the IJ's decision as part of the final agency action' if 'the BIA adopted the findings or the reasoning of the IJ.'" Etenyi v. Lynch, 799 F.3d 1003, 1006 (8th Cir. 2015) (citation omitted).

While Mohamed frames his assertions as legal errors on the part of the BIA, his claims are best described as attacking the BIA's factual determinations. "[E]xamining changed country conditions is a factual issue." Sharif, 965 F.3d at 620 n.2 (alteration in original) (citation omitted). As such, in reviewing factual determinations, we utilize the substantial evidence standard: "The agency's 'findings of fact are conclusive unless any reasonable adjudicator would be compelled to conclude to the contrary.'" Nasrallah v. Barr, 140 S. Ct. 1683, 1692 (2020) (citation omitted).

Mohamed first contends that the BIA failed to consider al-Shabaab's growing power and influence in Somalia in its changed-country-conditions analysis. Mohamed argues that al-Shabaab has had a "parabolic" presence in Somalia, with its heights of power occurring in the late 2000s and now. See Pet'r's Reply Br. 1-2. We have acknowledged the possibility that a petitioner could present evidence of a

-5-

material "escalation of violence and tension" such that a finding of changed country conditions would be warranted. See Habchy, 471 F.3d at 867-68. However, the standard remains that the petitioner must establish that the country conditions at the time of his motion to reopen are materially different from those that existed at the time of his initial proceedings. See Sharif, 965 F.3d at 618; see also Zeah, 828 F.3d at 704 ("'[E]vidence [that] reflects conditions substantially similar to those that existed at the time of [the first] hearing' does not show a *change* in country conditions." (second and third alterations in original) (citation omitted)). Here, the IJ recognized al-Shabaab's recent rise in power but concluded that the evidence reflected "country conditions substantially similar to those in place at the time [Mohamed] was ordered removed in 2011." Admin. R. 99, ECF No. 4853065. The IJ described in detail al-Shabaab's acts of violence occurring immediately prior and into 2011, while Mohamed presents only one reference that indicates that al-Shabaab's power *began* to wane in 2011. Therefore, we do not find "any reasonable adjudicator would be compelled to conclude" that al-Shabaab's presence in Somalia is materially different than existed in 2011 based on Mohamed's evidence. Nasrallah, 140 S. Ct. at 1692.

Mohamed next contends that the IJ and BIA failed to account for the emergence and growth of ISIS-Somalia in its determination. The IJ did account for the presence of ISIS-Somalia but ultimately determined that the "isolated references" in the record were insufficient to establish Mohamed's claims. Admin. R. 98, ECF No. 4853065. Upon reviewing the record, we do not find that "any reasonable adjudicator could be compelled to conclude the contrary." Nasrallah, 140 S. Ct. at 1692.

Finally, Mohamed contends that the IJ and BIA did not appropriately consider his personal circumstances when determining whether the alleged changed country conditions were material. Specifically, he argues that he will be more susceptible to attack by al-Shabaab because he is "Westernized" and was involved in ICE's failed repatriation flight to Somalia in 2017. However, the IJ concluded that Westernized Somalis face no greater threat of harm than existed at the time of Mohamed's prior

proceedings in 2011. The IJ further determined that Mohamed failed to sufficiently show how his presence on the 2017 repatriation flight thrust him into "particular notoriety" thereby creating a greater risk of persecution. We considered this exact proposition in Shire, 967 F.3d at 726, and affirmed the IJ and BIA. After review of the record, we do not find that it compels a contrary conclusion in this case. Therefore, the IJ and BIA did not err in their determinations.

## III.

Accordingly, we deny the petition for review.

_____