In the

# United States Court of Appeals

## For the Seventh Circuit

No. 15-2216

LUIS GUTIERREZ-ROSTRAN,

*Petitioner*,

*v.*

LORETTA E. LYNCH, Attorney General of the United States,

*Respondent*.

Petition for Review of an Order of the
Board of Immigration Appeals.
No. A200-882-317

ARGUED DECEMBER 15, 2015 — DECIDED JANUARY 13, 2016

Before BAUER, POSNER, and HAMILTON, *Circuit Judges*.

POSNER, *Circuit Judge*. The petitioner, Luis Gutierrez-Rostran, a Nicaraguan citizen, entered the United States illegally in 2006, and decided to stay. Although his stated motive for immigrating was fear that the government of Nicaragua would encourage or condone his being murdered by its supporters because of his and his family's political views, he did not make a timely application for asylum. See 8 U.S.C. § 1158(a)(2)(B).

In 2010 he was convicted of public intoxication and driving under the influence. After eight days in jail he was issued a Notice to Appear for immigration proceedings and released on bail the same day. Eventually he was ordered to be removed to Nicaragua. He then applied for asylum under 8 U.S.C. § 1158, and for withholding of removal under 8 U.S.C. § 1231(b)(3)(A) (formerly 8 U.S.C. § 1253(h)(1)(1990)) in the alternative. To obtain the second form of relief he had to show that his "life or freedom would be threatened in [Nicaragua] because of [his] race, religion, nationality, membership in a particular social group, or political opinion." The immigration court turned him down and the Board of Immigration Appeals affirmed, precipitating the petition for review that brings his case to us.

He challenges both the denial of his untimely asylum application and the denial of his claim for withholding of removal. Regarding the former challenge, to prevail given the untimeliness of the application he would have to show that the immigration court or the Board had committed a legal error, 8 U.S.C. § 1252(a)(2)(D); *Restrepo v. Holder*, 610 F.3d 962, 964–65 (7th Cir. 2010), and he hasn't done that. He argues only that violence toward persons such as him has increased in Nicaragua in recent years, thus justifying his belated application. But unfortunately for him "issues of changed or extraordinary circumstances are questions of fact that lie outside the realm of § 1252(a)(2)(D)." *Aimin Yang v. Holder*, 760 F.3d 660, 665 (7th Cir. 2014).

So we turn to his claim for withholding of removal, and begin by sketching some essential background. Augusto César Sandino was a Nicaraguan revolutionary who between 1927 and 1933 conducted a rebellion against the U.S.

military occupation of Nicaragua. He was assassinated in 1934 at the direction of Anastasio Somoza Garcia, who became the nation's ruler, succeeded by his sons after he was assassinated. The Sandinista party, named in memory of Sandino, rose up against the Somozas, and under the leadership of Daniel Ortega wrested control of the country from them. That happened in 1979 and Ortega ruled the country as a dictator until 1990. He then permitted free elections, was repeatedly defeated, and did not achieve his old authority until he won (though with only a plurality of the votes) the presidential election held in 2006. Since then his power has been secure.

Ortega's defeats in that interim period were by the Liberal Constitutionalist Party (known as PLC from the initials of its Spanish name), then the main opposition party, and parties allied to it, notably the Independent Liberal Party (the PLI). Gutierrez-Rostran was active in one of those two parties (though it's unclear which one), as were his father, his two brothers, and two uncles, one of them a mayor and the other a PLC representative who, Gutierrez-Rostran testified, "was to become a mayor as well."

Because of the family's intimate connections with a political movement that had long delayed Ortega's return to power, both Gutierrez-Rostran and his two brothers fled the country when Ortega was elected president in 2006, though the brothers fled not to the United States but to Costa Rica and Guatemala, respectively, and since fleeing have (for a reason we'll explain shortly) been able to make extended visits to Nicaragua without being threatened or harassed.

In his hearing before the immigration court on his application for withholding of removal, Gutierrez-Rostran testi-

fied that his family and members of the PLI had told him that both his cousin and his friend had been murdered by the Sandinistas—in fact by the son of one of President Ortega's bodyguards. Another friend of Gutierrez-Rostran, Rogelio Ruiz-Sotelo, testified that the cousin had received threats from Sandinistas, and though in response to the threats he had moved to a far-off city in Nicaragua he nevertheless was murdered there. Ruiz-Sotelo further testified that he'd attended the cousin's funeral and heard things in the city that convinced him that the murderer was a Sandinista. (That testimony was hearsay, but hearsay is admissible in immigration proceedings. *N.L.A. v. Holder*, 744 F.3d 425, 436 (7th Cir. 2014).) He also testified that, while a poll worker in an election held in 2012, he had been stoned by Sandinistas and forced to surrender his ballots to them, and that he had complained to the authorities but both the captain of police and the town's mayor were Sandinistas and threatened to kill him if he said anything about the attack against him. (On the collaboration of Nicaraguan police in Sandinista violence against political opponents, see, e.g., Tim Rogers, "6 Dead in Post-Election Violence," *Nicaragua Dispatch*, November 9, 2011, http://nicaraguadispatch.com/2011/11/6-dead-in-post-election-violence/.)

The immigration judge who presided at Gutierrez-Rostran's hearing denied withholding of removal on the ground that none of his immediate family members had been harmed or even threatened, and that the various articles and reports he submitted about political violence between Sandinistas and members of the opposition parties fell short of proving that it was more likely than not that he would be persecuted if he returned to Nicaragua. The Board affirmed the denial, discounting as "speculative" the conten-

tion that the cousin's murder had been "at the hands of the Sandinistas."

The treatment by the immigration court and the Board of the cousin's murder was too cursory to justify denial of Gutierrez-Rostran's application for withholding of removal. There was evidence of violence by Sandinistas against liberal party members; the cousin was a liberal from a well-known liberal family; and Gutierrez-Rostran's testimony, Ruiz-Sotelo's testimony (including his testimony that public officials—a mayor and a police chief—had refused to protect him against Sandinista harassment), and letters of Gutierrez-Rostran's parents and of PLI officials, made a prima facie showing that Gutierrez-Rostran would be in great danger were he to be returned to Nicaragua while the Sandinistas are in power. Although Gutierrez-Rostran's parents, brothers, sisters, and uncles have not been persecuted, the parents are old (his father is 78) and neither they nor his one surviving uncle nor the sisters nor the brothers—who, remember, no longer live in Nicaragua—are politically active. An uncle of Gutierrez-Rostran who had been a liberal mayor was allowed to die in peace, but he too was old.

Neither the immigration judge nor the (as usual) single-member "panel" of the Board of Immigration Appeals gave a reason for doubting the weight or truthfulness of the evidence, evidence from which an inference could be drawn that Gutierrez-Rostran would indeed face a grave threat of suffering his cousin's fate were he forced to return to Nicaragua. Admissible, pertinent, credible evidence can't just be ignored, as the immigration court and the Board did in this case; reasonable grounds must exist, and be articulated, to justify rejection of such evidence. See, e.g., *Yi-Tu Lian v. Ash-*

*croft*, 379 F.3d 457, 461–62 (7th Cir. 2004). The immigration judge stated in his opinion, and the Board registered no disagreement, that Gutierrez-Rostran's testimony was "internally consistent, consistent with his written statement, and consistent with the other documents he submitted." The immigration judge also made no adverse credibility finding with regard to Ruiz-Sotelo. Yet having indicated that he thought Gutierrez-Rostran's testimony had been credible and not having suggested that Ruiz-Sotelo's evidence was not credible, the immigration judge contradicted himself by saying that "there is no evidence to corroborate the respondent's belief that [his cousin and friend] were killed by the Sandinista youth for their political beliefs." Ruiz-Sotelo had testified without contradiction that Sandinistas had threatened and then killed the cousin and friend, and why would Sandinistas have killed them other than for political reasons?

Against all this it can be argued that while the evidence indicates danger to Gutierrez-Rostran if he is returned to Nicaragua, it does not indicate that he is "more likely than not" to be persecuted if he is sent there, which the Supreme Court in *INS v. Stevic*, 467 U.S. 407, 424–25 (1984), held is the standard of proof for withholding of removal. See also 8 C.F.R. § 1208.16(b)(2); *Torres v. Mukasey*, 551 F.3d 616, 625 (7th Cir. 2008). That of course is the normal civil standard of proof. But it can't be taken literally in the immigration context. In an ordinary civil case there are witnesses, lay and/or expert, on both sides of the case, and likewise documentary evidence. But in the usual withholding-of-removal case, including this case, the only evidence is presented by the alien—and the immigration judge appears to have deemed that evidence credible.

What is missing in a case like this are data that would enable a rational determination of whether there was a greater than 50 percent probability that the alien would lose his life or his freedom if removed to his country of origin. *Rodriguez-Molinero v. Lynch*, No. 15-1860, 2015 WL 9239398, at *1 (7th Cir. Dec. 17, 2015). The first step in such an inquiry would be to define the endangered group (obviously not *all* the Nicaraguans who voted for PLC or PLI candidates) and the second to determine what percentage of them have lost their life or freedom at the hands of the Sandinistas, and also whether that percentage is growing or declining (or not changing). The immigrant is required to present evidence that he faces a significant probability of persecution if he is removed to his country of origin, and Gutierrez-Rostran did present such evidence, as we have seen. He could not be expected to quantify the probability of his being persecuted or killed should he be removed to Nicaragua. The data that would enable such quantification appear not to exist, because to be reliable they would have to specify all persons who had characteristics similar to those of the applicant for withholding of removal and how many of them had been killed or persecuted because of those characteristics. If such data do exist somewhere, the immigration authorities or the State Department may have access to them, but there is no indication of that.

The immigration judge may have been acknowledging the difficulty of taking the "more likely than not" standard literally as a 50+ percent probability when he said that an alien seeking withholding of removal could satisfy the standard of proof by demonstrating a "reasonable probability" of persecution if removed to his country of origin. That description of the standard is a step in the right direction.

The denial of withholding of removal and the affirmance of that denial by the BIA member who as the (entire) appeal "panel" denied the petitioner's appeal were not adequately reasoned and so must be set aside and the case returned to the Board for further proceedings consistent with this opinion. The petition for asylum is dismissed, however, as noted earlier in this opinion.