# United States Court of Appeals

## For the Eighth Circuit

_____

No. 15-2466

_____

Felicia Zeah

*Petitioner*

v.

Loretta E. Lynch, Attorney General of the United States

*Respondent*

_____

Petition for Review of an Order of the
Board of Immigration Appeals

_____

Submitted: March 17, 2016
Filed: July 8, 2016

_____

Before MURPHY, BEAM, and GRUENDER, Circuit Judges.

_____

BEAM, Circuit Judge.

Felicia Zeah petitions for review of the Board of Immigration Appeals' (BIA) denial of her motion to reopen her removal proceedings to apply for asylum, alleging that the BIA committed several legal errors and violated her due process rights. For the reasons discussed below, we deny the petition.

## I.    BACKGROUND

Zeah is a native and citizen of Nigeria.  She first entered the United States as a nonimmigrant visitor in 1985.  Zeah married James Wells in a civil ceremony in 1989, who then filed a Petition for Alien Relative (Form I-130) on her behalf. However, the United States Citizenship and Immigration Services (USCIS) found that Zeah's marriage to Wells was a sham marriage.  In fact, the USCIS found that Zeah was not divorced from her prior husband and thus, was not free to marry Wells.  Zeah has remained in the United States continuously since her entry in 1985, with the exception of two trips to Nigeria in 1992 and 2001.  In 2001 she was paroled into the United States for a period not to exceed October 3, 2002.  Zeah married Wilson Zeah (Wilson) on April 2, 1999, and they have three United States citizen children together.  Wilson filed an immediate relative visa petition on behalf of Zeah on April 7, 1999.  The USCIS denied this petition stating that "[s]ince Felicia has previously entered into a sham marriage to obtain immigration benefits, no new petitions may be approved."

On February 7, 2008, the Department of Homeland Security (DHS) issued Zeah a Notice to Appear, commencing removal procedures for being present in the United States without valid immigrant documentation in violation of § 212(a)(7)(A)(i)(I) of the Immigration and Nationality Act (INA).  Zeah admitted to the allegations, conceded the charge, and designated Nigeria as her country for removal.  She then filed an application for cancellation of removal, which was denied on September 7, 2010.  The immigration judge (IJ) found that no family member would suffer "exceptional or extremely unusual hardship" if Zeah were removed and found substantial evidence of Zeah's prior sham marriage.  She was granted voluntary departure in lieu of removal.  Zeah appealed the IJ's decision, and on October 12, 2012, the BIA entered the final administrative decision, upholding the IJ's decision. On March 6, 2014, this court denied Zeah's petition for review.  Zeah v. Holder, 744 F.3d 577, 579 (8th Cir. 2014).

On May 4, 2015, almost three years after the final administrative decision, Zeah filed a motion to reopen her removal proceedings to seek asylum based on fear of harm in Nigeria because of allegedly new, widespread violence from the terrorist group Boko Haram. She also sought withholding of removal and relief under the Convention Against Torture (CAT). She argued that "the dramatic and sudden change in country conditions in Nigeria" because of Boko Haram allowed her to reopen her case under 8 C.F.R. § 1003.2(c)(3)(ii). She alleged "past persecution as a woman as well as [a] well-founded fear of future persecution as a woman and a Christian due to the Boko Haram insurgence." As evidence of past persecution, Zeah noted various forms of abuse, including female genital mutilation perpetrated by her uncle. In support of her well-founded fear of future persecution argument, she stated that many family members had been displaced by Boko Haram or were missing, the group had seized many territories in Nigeria, and in April 2014, the group kidnaped approximately 300 Nigerian schoolgirls. She also suggested that the BIA exercise discretion and reopen her case due to her excellent behavior in the United States, strong family ties, and minor immigration violations.

On June 9, 2015, the BIA denied Zeah's motion to reopen. It determined that Zeah's motion was untimely because she did not qualify for an exception to the 90-day filing deadline. Zeah had not "met her heavy burden of establishing a material change in circumstances or conditions 'arising in the country of nationality' to excuse the 90-day motion time limitation." The BIA also noted that Zeah wanted to reopen her removal proceedings to claim asylum, which she should have raised in her first removal hearing. The BIA took administrative notice of the Department of State's 2009 Country Report on Human Rights Practices - Nigeria (2009 country report), which discussed atrocities committed by Boko Haram that occurred prior to Zeah's 2010 hearing, thus negating any allegation that country conditions had changed. Additionally, the BIA held that Zeah could not establish a prima facie case for asylum, as her fears were not specific to her, and there was insufficient evidence to

-3-

show that the Nigerian government was unable or unwilling to protect her from Boko Haram.

Zeah now appeals, arguing that the BIA (1) violated her due process rights by taking administrative notice of the 2009 country report; (2) applied a standard other than "material change" for excusing the 90-day motion to reopen time limitation; (3) improperly required her to show why she could not relocate to a different part of Nigeria to prove a prima facie asylum case; (4) improperly required her to show that the Nigerian government was unwilling, not just unable, to protect her from Boko Haram; (5) improperly used a standard other than "well-founded fear of future persecution" in determining that she failed to prove a prima facie asylum case; and (6) violated her due process rights by failing to consider the individualized evidence she submitted.

## II.    DISCUSSION

We review the BIA's denial of a motion to reopen for an abuse of discretion. Quinteros v. Holder, 707 F.3d 1006, 1009 (8th Cir. 2013). The BIA's decision will be overturned for an abuse of discretion "where it gives no rational explanation for its decision, departs from its established policies without explanation, relies on impermissible factors or legal error, or ignores or distorts the record evidence." Id. (quoting Guled v. Mukasey, 515 F.3d 872, 882 (8th Cir. 2008)).

Generally, motions to reopen are disfavored. INS v. Abudu, 485 U.S. 94, 107 (1988). "There is a strong public interest in bringing litigation to a close as promptly as is consistent with the interest in giving the adversaries a fair opportunity to develop and present their respective cases." Id. Also, granting too many motions to reopen subjects the court to "endless delay of deportation by aliens" who are financially able to continue litigating. Poniman v. Gonzales, 481 F.3d 1008, 1011 (8th Cir. 2007) (quoting Gebremaria v. Ashcroft, 378 F.3d 734, 737 (8th Cir. 2004)). A motion to

reopen must "state the *new* facts that will be proven . . . and . . . be supported by affidavits or other evidentiary material." 8 U.S.C. § 1229a(c)(7)(B) (emphasis added). A movant may file only one motion to reopen, id. § 1229a(c)(7)(A), and the motion must be filed within 90 days after the final administrative decision is entered. Id. § 1229a (c)(7)(C)(i). If the movant is seeking a motion to reopen to be considered for a grant of asylum because of "changed country conditions arising in the country of nationality or the country to which removal has been ordered," however, there is no time limit. Id. § 1229a(c)(7)(C)(ii). This exception only applies if evidence of the changed country condition "is material and was not available and would not have been discovered or presented at the previous proceeding." Id. Here, it is undisputed that Zeah's motion to reopen was untimely. Zeah filed her motion to reopen on May 4, 2015, well over two years after the final administrative decision was entered on October 12, 2012. However, Zeah argues that the BIA erred in several respects when it held that she did not qualify for the asylum exception to the 90-day filing deadline.

First, Zeah argues that the BIA violated her due process rights by taking administrative notice of facts contained in the 2009 country report. We disagree. In determining whether there has been a material change in country conditions sufficient to override the 90-day filing deadline for a motion to reopen, the BIA "compare[s] the evidence of country conditions submitted with the motion [to reopen] to those that existed at the time of the merits hearing below." In re S-Y-G, 24 I. & N. Dec. 247, 253 (BIA 2007). Thus, Zeah knew that the court would examine prior country conditions in Nigeria. See Zhong Qin Zheng v. Mukasey, 523 F.3d 893, 896 (8th Cir. 2008) (stressing that there must be material evidence of an actual change in country conditions). Moreover, "[w]e have approved the BIA's use of administrative notice of changed conditions in an alien's home country," including facts contained in country reports. Francois v. INS, 283 F.3d 926, 933 (8th Cir. 2002). Zeah claims that the 2009 country report fails to show Boko Haram violence against women and children, which the BIA relied upon when making its decision. However, the 2009 country report specifically states that Boko Haram, "an Islamic extremist group," was

"forcibly holding women and children" and that there was an increasing amount of "[v]iolence between Christians and Muslims." Nonetheless, even if Zeah's allegations were correct, mere disagreement about the interpretation of evidence does not constitute an abuse of discretion. See Vargas v. Holder, 567 F.3d 387, 391 (8th Cir. 2009). Zeah also claims that she did not have an opportunity to rebut the administratively noticed facts contained in the 2009 country report. This argument, however, is flawed because Zeah submitted the 2009 country report as part of a supplemental exhibit in her removal proceedings, which refutes any claim that the document was incorrect or subjected her to unfair surprise.

Second, Zeah argues that the BIA erred by applying a legal standard other than "material change." She alleges that the BIA held that she was unable to show changed country conditions because she "could not prove a novel, or completely new, type of harm." Again, we disagree. To be excused from the 90-day filing deadline, the movant must prove changed country conditions, not a change in personal conditions. Zheng, 523 F.3d at 895. Also, as pertinent in this case, "evidence [that] reflects conditions substantially similar to those that existed at the time of [the first] hearing" does not show a *change* in country conditions. Id. Zeah's alleged past persecution in the 1960's does not establish a material change in country conditions in Nigeria in 2014. Her past persecution based on gender gave her the opportunity to claim asylum when she first entered the United States in 1985 and again at her removal hearing in 2010. Although helpful for a claim of asylum, the fact that she may have suffered past persecution undermines her claim of changed country conditions. Also, Zeah gives no reason for her failure to bring the asylum claim at an earlier time. And, the BIA correctly stated that "motions to reopen are not vehicles for presenting new allegations that could have been previously raised."

Zeah's claim of a material change in country conditions in Nigeria based on Boko Haram also lacks merit. She argues that the kidnaping of approximately 300 Nigerian schoolgirls, an increase in murders, and the violent seizure of several parts

of Nigeria are evidence of changed country conditions due to increased violence by Boko Haram. However, as briefly mentioned above, Zeah failed to submit the necessary pre-2014 evidence as a benchmark to prove there has been any change. See id. at 896 (holding it "is not material evidence of *changed* circumstances when there is no evidence of [prior country conditions]"). Moreover, Boko Haram has been perpetrating violence against women and children since at least 2009, which was prior to Zeah's removal proceedings. In fact, as the BIA noted, Zeah's evidence in support of her motion to reopen states, "Boko Haram has existed since 2002 and has long engaged in terrorism." The motion itself further states, "Since her filing with the Immigration court, conditions in Ms. Zeah's home country of Nigeria have *remained* appalling." This suggests no change in country conditions. Thus, the BIA applied the correct standard, "material change," and did not abuse its discretion by holding that Zeah failed to show a material change in country conditions in Nigeria.

## III. CONCLUSION

Because we hold that Zeah's motion to reopen was untimely due to her inability to show a material change in country conditions in Nigeria, which would have excused her from the 90-day time limitation for filing the motion, we need not address whether the BIA erred in determining she had not established a prima facie case of asylum, the relief sought.[1] Thus, we affirm the BIA's denial of Zeah's motion to reopen and deny the petition for review on appeal.

_____

[1]Zeah does not appeal the BIA's holding that she failed to "establish[] an exceptional circumstance warranting sua sponte reopening" by the court.