# United States Court of Appeals
## For the Eighth Circuit

———————————————

No. 19-1478

———————————————

Bashir Mohamed Sharif

*Petitioner*

v.

William P. Barr, Attorney General of the United States

*Respondent*

——————————

Petition for Review of an Order of the
Board of Immigration Appeals

——————————

Submitted: January 17, 2020
Filed: July 7, 2020

——————————

Before SMITH, Chief Judge, LOKEN and GRUENDER, Circuit Judges.

——————————

GRUENDER, Circuit Judge.

Bashir Mohamed Sharif petitions for review of the Board of Immigration Appeals' ("BIA") decision to affirm an Immigration Judge's ("IJ") denial of his motion to reopen removal proceedings and to deny his motion to remand. For the reasons discussed below, we deny the petition in part and dismiss the remainder.

# I.

Sharif, a native and citizen of Somalia, was admitted to the United States in 2000 as a refugee. He adjusted his status to lawful permanent resident in 2002. From 2005 to 2006, Sharif was convicted of three crimes, including violation of a protection order, *see* S.D. Codified Laws § 22-19A-16; injury to property, *see* S.D. Codified Laws § 22-34-1; and felony possession of a controlled substance, *see* S.D. Codified Laws § 22-42-5.

As a result, the Department of Homeland Security initiated removal proceedings against Sharif in 2007, charging him with being removable under 8 U.S.C. §§ 1227(a)(2)(A)(ii)-(iii) and 1227(a)(2)(B)(i). While represented by counsel, Sharif conceded the charges, admitted removability, and declined to apply for any form of relief. The IJ ordered him removed to Somalia, and Sharif waived his appeal to the BIA.

The Government did not seek to remove Sharif until a 2012 change in policy resumed deportations to Somalia. In December 2017, Sharif was placed on a flight to Somalia, chartered by Immigration and Customs Enforcement. Due to logistical issues, however, the plane landed in Senegal, where it remained for twenty hours before returning to the United States.

On June 15, 2018, Sharif filed a motion to reopen removal proceedings to seek asylum, withholding of removal, and relief under the Convention Against Torture ("CAT") based on a claim of changed country conditions in Somalia. *See* 8 U.S.C. § 1229a(c)(7)(C)(ii); 8 C.F.R. §§ 1003.23(b)(4)(i), 1208.4(b)(3)(ii). The IJ denied Sharif's motion to reopen, finding that he failed to demonstrate a material change in country conditions since his 2008 removal order, and Sharif appealed to the BIA. While his appeal to the BIA was pending, Sharif filed a motion to remand to the IJ based on new evidence—an affidavit from Sharif's sister—not available at the time of the original filing of his motion to reopen. Considering the motions together, *see* 8 C.F.R. § 1003.2(c)(4), the BIA affirmed the IJ's denial of Sharif's motion to reopen

and denied the motion to remand because Sharif had failed to demonstrate a material change in country conditions.

Sharif timely petitioned this court for review. *See* 8 U.S.C. § 1252(b)(1). In response, the Government moved to dismiss for lack of jurisdiction because Sharif was subject to removal as a criminal alien. *See id.* § 1252(a)(2)(C). We ordered the motion to dismiss to be taken with the case for consideration with the merits of Sharif's petition.

## II.

Sharif argues that the BIA abused its discretion in affirming the IJ's denial of his motion to reopen because he failed to show a material change in country conditions, erred in applying its own evidentiary standards, abused its discretion in denying his motion to remand in light of new evidence, and violated his due process rights by failing to consider evidence and arguments raised in his petition. In response, the Government contends that we lack jurisdiction to review any of Sharif's claims and, in any event, that Sharif's contentions lack merit.

A motion to reopen generally must be filed within ninety days of a final order of removal. *Martinez v. Lynch*, 785 F.3d 1262, 1265 (8th Cir. 2015). As a result, Sharif's motion, filed roughly a decade after his final order of removal, was untimely. But the "untimeliness of a motion to reopen may be excused if a petitioner shows changed country conditions based on evidence not previously available and if he makes a prima facie showing that, if reopened, his case would lead to relief." *Rivera-Guerrero v. Barr*, 926 F.3d 1050, 1052 (8th Cir. 2019) (per curiam) (citing 8 C.F.R. § 1003.2(c)(3)(ii)); *see also Go v. Holder*, 744 F.3d 604, 607-09 (9th Cir. 2014) (holding that the requirements of 8 C.F.R. § 1003.2 are applicable to motions to reopen CAT claims). The moving party "bears a heavy burden" to demonstrate why the case should be reopened. *Hernandez-Moran v. Gonzales*, 408 F.3d 496, 499 (8th Cir. 2005). The question when such a motion is filed is not whether the petitioner may have initially qualified for the requested relief, but whether, having

-3-

failed to secure that relief during the initial proceeding, he has demonstrated a change in country conditions since his initial hearing that materially affects his claim to relief. *Zeah v. Lynch*, 828 F.3d 699, 704 (8th Cir. 2016). In determining whether there has been a material change in country conditions, the BIA "compares the evidence of country conditions submitted with the motion to reopen to those that existed at the time of the merits hearing below." *Id.* at 703 (brackets omitted).

"We review both the denial of a motion to remand and the denial of a motion to reopen for abuse of discretion." *Caballero-Martinez v. Barr*, 920 F.3d 543, 549 (8th Cir. 2019). "The BIA abuses its discretion if its decision is without rational explanation, departs from established policies, invidiously discriminates against a particular race or group, or where the agency fails to consider all factors presented by the alien or distorts important aspects of the claim." *Id.* "We generally review the BIA's decision as the final agency action," but where "the BIA essentially adopted the IJ's opinion while adding some of its own reasoning, we review both decisions." *Garcia v. Holder*, 746 F.3d 869, 872 (8th Cir. 2014).

If, however, the petitioner is a criminal alien under 8 U.S.C. § 1252(a)(2)(C), our jurisdiction to review final orders of removal and denials of motions to reopen final orders of removal "is limited to constitutional claims and questions of law." *Hanan v. Mukasey*, 519 F.3d 760, 763 (8th Cir. 2008); 8 U.S.C. § 1252(a)(2)(D). We review the BIA's legal determinations "de novo, according substantial deference to the BIA's interpretation of the statutes and regulations it administers." *Martinez*, 785 F.3d at 1265.

Sharif was found removable for having been convicted of a controlled substance offense (an aggravated felony) and crimes of moral turpitude, he conceded the charges at his initial removal proceedings, and he does not disagree that the criminal-alien bar applies in this case.[1] Thus, at least concerning Sharif's claims for

---

[1]In his motion to reopen, Sharif challenged whether his conviction for possession of cocaine in violation of South Dakota Codified Law section 22-42-5

-4-

asylum and withholding of removal, "[w]e lack jurisdiction to review factual findings" and may only review constitutional claims or questions of law. *Hanan*, 519 F.3d at 763.

In evaluating whether a petition raises a constitutional claim or question of law, we look to the "nature of the argument advanced in the petition." *Purwantono v. Gonzales*, 498 F.3d 822, 824 (8th Cir. 2007). We have jurisdiction to review pure questions of law, such as the definition of a statutory term. *Cherichel v. Holder*, 591 F.3d 1002, 1009 (8th Cir. 2010) ("[D]efining the correct legal standard . . . is a question of law . . . ."); *Hanan*, 519 F.3d at 764 (reviewing criminal alien's claim that BIA misinterpreted the term "acquiescence" in its CAT analysis); *see also Luhiso v. Barr*, 787 F. App'x 319, 321-23 (6th Cir. 2019) (addressing the merits of the argument that the BIA erred by treating a changed country condition as a changed personal circumstance). In addition, the Supreme Court recently clarified that we have jurisdiction to review mixed questions of law and fact, including the proper "application of a legal standard to undisputed or established facts." *Guerrero-Lasprilla v. Barr*, 589 U.S. ---, 140 S. Ct. 1062, 1067 (2020).

Nonetheless, this jurisdictional limitation on our review does not apply to Sharif's CAT claim. Just a few weeks ago, the Supreme Court determined that "[a] CAT order is not itself a final order of removal," and as a result, § 1252(a)(2)(C)-(D) does not divest the courts of appeals of jurisdiction to review factual challenges to CAT orders. *Nasrallah v. Barr*, 590 U.S. ---, 140 S. Ct. 1683, 1691, 1694 (2020). Accordingly, we review the BIA's denial of Sharif's motion to reopen his CAT claim for abuse of discretion. *See Mwangi v. Barr*, 934 F.3d 818, 819 (8th Cir. 2019).

---

remained an aggravated felony in light of the Supreme Court's decision in *Moncrieffe v. Holder*, 569 U.S. 184, 206 (2013). But Sharif did not raise this challenge in his petition to this court, and we consider him to have waived the issue. *See Chong Toua Vue v. Barr*, 953 F.3d 1054, 1058 (8th Cir. 2020); *Alyas v. Gonzales*, 419 F.3d 756, 760 (8th Cir. 2005) ("Because [petitioner] does not argue these issues in his brief, we do not consider them as part of the petition for review.").

A.

With these considerations in mind, we determine that we lack jurisdiction to review the vast majority of Sharif's arguments concerning his motion to reopen his asylum and withholding of removal claims because they merely constitute a brief in opposition to the BIA's factual findings. Sharif contends that the BIA mischaracterized the evidence in the record regarding Al-Shabaab's capabilities, ignored and distorted evidence of Al-Shabaab's operational focus, ignored evidence of the formation of ISIS-Somalia, and equated two distinct Somali governmental bodies. Put differently, Sharif does not assert that the facts as found by the BIA, taken on their own terms, are legally sufficient to constitute a change in country conditions that materially affects his eligibility for asylum or withholding of removal. Thus, Sharif's argument concerning changed country conditions is aimed directly at the agency's factual determinations.

We reach this conclusion because, whatever the effect of the recent holding in *Guerrero-Lasprilla* concerning our jurisdiction to review petitions presenting mixed questions of law and fact,[2] we think it apparent that we remain barred from

_____

[2]Prior to *Guerrero-Lasprilla*, our sister circuits disagreed as to whether questions of changed circumstances or changed country conditions could present a question of law exempt from the criminal-alien bar. *Compare Agonafer v. Sessions*, 859 F.3d 1198, 1203 (9th Cir. 2017) ("[J]urisdiction is . . . proper because we are called upon to apply the legal standard for prevailing on a motion to reopen based on changed country conditions to the established facts in this case."), *and Ramadan v. Gonzales*, 479 F.3d 646, 650 (9th Cir. 2007) (per curiam) (concluding "questions of law" included "the application of statutes or regulations to undisputed facts" and thus the court had jurisdiction to review the BIA's determination of whether circumstances had changed), *with Fabian-Soriano v. Barr*, 925 F.3d 552, 556 n.4 (1st Cir. 2019) (noting that the Ninth Circuit's approach in *Ramadan* "is not our law"), *and Gutierrez-Rostran v. Lynch*, 810 F.3d 497, 499 (7th Cir. 2016) ("[I]ssues of changed or extraordinary circumstances are questions of fact that lie outside the realm of § 1252(a)(2)(D)."). But our precedent was clear: we had not adopted the Ninth Circuit's approach, *see Atsiz v. Gonzales*, 231 F. App'x 526, 528 (8th Cir.

reviewing the factual elements of those questions when the criminal-alien bar applies. *See Mohamed v. Barr*, 797 F. App'x 1019, 1025 (6th Cir. 2020) (noting that whether country conditions have changed "is a *predominantly* factual determination" and that when a claim "relies on contesting . . . factual determinations," "the jurisdictional bar remains intact" (emphasis added)).

In coming to this conclusion, we are guided by several considerations. First, "no administrative case can be decided without applying some law to some facts," *Viracacha v. Mukasey*, 518 F.3d 511, 515 (7th Cir. 2008), and we do not read the Supreme Court as instructing us to convert every issue into a question of law that side steps the criminal-alien bar. Instead, in *Guerrero-Lasprilla*, the Supreme Court held that we have jurisdiction to review the "application of a legal standard *to undisputed or established facts*." 140 S. Ct. at 1067 (emphasis added). We believe the Supreme Court meant what it said. *See Mathis v. United States*, 579 U.S. ---, 136 S. Ct. 2243, 2254 (2016) ("[A] good rule of thumb for reading our decisions is that what they say and what they mean are one and the same . . . .").

Accordingly, we refuse to adopt a reading of § 1252(a)(2)(D) that "vitiates all clauses in the statute." *Viracacha*, 518 F.3d at 515; *see also Ramadan v. Keisler*, 504 F.3d 973, 978 (9th Cir. 2007) (O'Scannlain, J., dissenting from the denial of rehearing en banc) (pointing out that even the legislative history marshaled as support by the *Ramadan* panel stated that, for mixed questions of law and fact, "the court should analyze it to the extent that there are legal arguments, but should not review any factual elements"). Thus, if a petition raises a "mixed question of law and fact," we review the question to the extent it turns on an interpretation of law, but we emphasize that we are precluded from addressing factual disputes that lurk within those questions. *See Kassim v. Barr*, 954 F.3d 1138, 1141 n.1 (8th Cir. 2020) (distinguishing between challenges to the factual part of the hardship inquiry and

---

2007) (per curiam), because "[e]xamining changed country conditions is a factual issue," *Thobhani v. Holder*, 536 F. App'x 676, 677 (8th Cir. 2013) (per curiam); *Hanan v. Mukasey*, 519 F.3d at 763; *Hanan v. Gonzales*, 449 F.3d 834, 837 (8th Cir. 2006).

challenges that present a question of law); *Jun Min Zhang v. Gonzales*, 457 F.3d 172, 176-79, 178 n.3 (2d Cir. 2006) (Cabranes, J., concurring) (rejecting proposed interpretation of "questions of law" that would permit "any discretionary, fact-based decision" to be "recast as a definitional inquiry involving the application[] of contoured statutory language to a particular set of facts" (alteration in original) (internal quotation marks omitted)).

We adhere to these strictures because "careful attendance to the bounds of our jurisdiction 'is not a mere nicety of legal metaphysics,' but essential to the rule of law in 'a free society.'" *Iliev v. Holder*, 613 F.3d 1019, 1028 (10th Cir. 2010) (Gorsuch, J.) (quoting *U.S. Catholic Conference v. Abortion Rights Mobilization, Inc.,* 487 U.S. 72, 77 (1988)). "After all, '[t]he courts, no less than the political branches of the government, must respect the limits of their authority.'" *Id.* (quoting *U.S. Catholic Conference*, 487 U.S. at 77)).

Here, Sharif's claims merely invite us to second guess the BIA's fact-finding as to the conditions in Somalia and, simply put, do not present a question of law at all. *See Barajas-Salinas v. Holder*, 760 F.3d 905, 907 (8th Cir. 2014) (noting that the petitioner's "quarrel" with the BIA's "evaluation of . . . factual information . . . presents no question of law"). Indeed, Sharif did not present his arguments as meriting *de novo* review, but he instead claimed the BIA abused its discretion. This framing is a telling admission of the nature of his arguments considering longstanding precedent that we review questions of law *de novo*. *See, e.g.*, *Jima v. Barr*, 942 F.3d 468, 472 (8th Cir. 2019); *Doe v. Holder*, 651 F.3d 824, 828 (8th Cir. 2011).

Elsewhere, Sharif resorts to the rhetoric of law, contending the BIA erred "as a matter of law" in "failing to consider the escalating threat of Al-Shabaab." In reality, however, Sharif's contentions are an "attempt[] to create jurisdiction by cloaking an abuse of discretion argument in constitutional or legal garb." *See Urrutia Robles v. Barr*, 940 F.3d 420, 421 (8th Cir. 2019). Even when arguing the BIA committed legal error, Sharif revisits his contentions that the BIA's fact-finding

-8-

is "unsubstantiated" and that the "evidence . . . show[s]" Al-Shabaab did not target Americans or other westerners in 2008. But the BIA found the opposite, concluding that at the time of Sharif's initial hearing, "Islamic extremists bombed cinemas, attacked persons whom they asserted were not behaving 'appropriately,' killed numerous expatriates, forcefully shaved the heads of persons they accused of wearing inappropriate hairstyles, and imposed a ban on smoking and music." Thus, Sharif's complaint is that the BIA did not agree with him regarding the conditions in Somalia in 2008—precisely the kind of dispute with fact-finding determinations courts continue to lack jurisdiction to review.

In his reply brief, Sharif changes course and argues that "the BIA committed legal error" in evaluating changed country conditions "by failing to analyze" how general conditions of unrest in Somalia, while constant, may have changed in ways that increased the likelihood he will face harm. He thus contends "the BIA incorrectly applied [the changed country conditions] legal standard." To the extent this argument presents a question of law, it was untimely raised. *See Navarijo-Barrios v. Ashcroft*, 322 F.3d 561, 564 n.1 (8th Cir. 2003).

## B.

Our jurisdiction to review Sharif's arguments pertaining to his CAT claim is broader, *see Nasrallah*, 140 S. Ct. at 1694, but the result is the same. In the absence of the criminal-alien bar, we review the denial of a motion to reopen for abuse of discretion. *See Caballero-Martinez*, 920 F.3d at 549. The BIA abuses its discretion in denying a motion to reopen when "it gives no rational explanation for its decision, departs from its established policies without explanation, relies on impermissible factors or legal error, or ignores or distorts the record evidence." *Quinteros v. Holder*, 707 F.3d 1006, 1009 (8th Cir. 2013). We conclude the BIA did not abuse its discretion.

"To qualify for relief under the CAT, an alien must show 'that it is more likely than not that he or she would be tortured if removed to the proposed country of

-9-

removal.'" *Malonga v. Mukasey*, 546 F.3d 546, 554-55 (8th Cir. 2008) (quoting 8 C.F.R. § 1208.16(c)(2)). Thus, to meet his burden on a motion to reopen, Sharif needed to demonstrate a change in country conditions in Somalia that materially affected his likelihood of facing torture. *See Zeah*, 828 F.3d at 704; *Ramos-Braga v. Sessions*, 900 F.3d 871, 882 (7th Cir. 2018) (holding that the BIA did not abuse its discretion in denying petitioner's motion to reopen where he failed to present evidence that materially affected his likelihood of facing torture). The relevant regulations define "torture" as "any act by which severe pain or suffering . . . is intentionally inflicted on a person for such purposes as . . . punishing him or her for an act he or she or a third person has committed." *Ramirez-Peyro v. Holder*, 574 F.3d 893, 899 (8th Cir. 2009) (quoting 8 C.F.R. § 1208.18(a)(1)). "The 'pain or suffering' must be 'inflicted by or at the instigation of or with the consent or acquiescence of a public official or other person acting in an official capacity.'" *Id.* (quoting 8 C.F.R. § 1208.18(a)(1)).

With regards to his CAT claim, Sharif appears primarily to argue that the BIA abused its discretion in denying his motion to reopen because he demonstrated that Somalia's new government—the Federal Government of Somalia ("FGS")—has been infiltrated by Al-Shabaab and thus is now more likely than the previously existing government—the Transitional Federal Government ("TFG")—to acquiesce to his torture by Al-Shabaab. But Sharif did not present evidence to the BIA regarding the TFG's likelihood of acquiescing to his torture or the infiltration of the TFG by Islamic extremists in 2008. Indeed, Sharif admits as much.

Because Sharif presented no evidence regarding the previous infiltration of Al-Shabaab into the TFG or the TFG's willingness to acquiesce to his torture, the BIA did not abuse its discretion in determining he had not shown facts that "would likely change the result in the case" on account of a material change in country conditions. *See Romero-Larin v. Sessions*, 733 F. App'x 847, 851 (8th Cir. 2018) (per curiam); *see also Mohamed*, 797 F. App'x at 1026 ("On his claim regarding Al-Shabaab's infiltration of the Somali government, the immigration judge found this did not amount to changed country conditions, since Al-Shabaab controlled major

governmental functions in Somalia beginning in 2008. While Mohamed is correct that this is not the same [government] as the FGS, which was established after 2009, this is a distinction without a difference with respect to the threat he faces from Al-Shabaab in Somalia.").

## C.

Sharif next argues that the BIA erred when it took administrative notice of a State Department report on human rights practices in Somalia that was unavailable to Sharif at the time of his original hearing in 2008. According to Sharif, the BIA misinterpreted 8 U.S.C. § 1229a(c)(7)(C)(ii) and ignored its own precedent construing the statute. *See In re S-Y-G-*, 24 I. & N. Dec. 247, 253 (BIA 2007). This contention is without merit. *See Zeah*, 828 F.3d at 703-04.

## D.

We next turn to Sharif's motion to remand. As a general matter, remand is warranted when a petitioner presents new evidence that "is of such a nature . . . that if proceedings before the IJ were reopened . . . the new evidence would likely change the result in the case." *Clifton v. Holder*, 598 F.3d 486, 492 (8th Cir. 2010). But "where a motion to remand is really . . . a motion to reopen . . . , it must comply with the substantive requirements for such motions." *Id.* Here, Sharif's motion to remand was functionally equivalent to a motion to reopen because his "motion to reopen had never been granted." *See In re L-V-K-*, 22 I. & N. Dec. 976, 979 (BIA 1999). Thus, Sharif needed to demonstrate that the evidence attached in his motion to remand, when considered with other evidence, met his "heavy burden" to show a "material change in circumstances or conditions" in Somalia. *See Zeah*, 828 F.3d at 702; *In re S-Y-G-*, 24 I. & N. Dec. 247, 258 (BIA 2007). The criminal-alien bar "applies not only to the underlying removal order but also to any subsequent motion to remand, reopen, or reconsider the order." *Arreola v. Holder*, 324 F. App'x 506, 508 (7th Cir. 2009) (per curiam).

-11-

We first determine that we lack jurisdiction to review Sharif's arguments to the extent they concern his asylum and withholding of removal claims. The BIA found remand was not warranted because Sharif's new evidence failed to demonstrate a change—as opposed to a continuation—of "poor" conditions in Somalia. On appeal, Sharif contends that the BIA "failed to grant adequate consideration" to the new evidence he produced and "mischaracterize[d]" his claim by finding that he had not produced evidence concerning relevant conditions at the time of his initial removal proceeding. Sharif's petition then does not present "undisputed facts" but instead requires us to evaluate the country conditions for Somalia in 2008. Indeed, it is clear that Sharif did not raise a claim alleging error in "the application of a legal standard to undisputed or established facts," *Guerrero-Lasprilla*, 140 S. Ct. at 1067, because he provides no legal argument on the standard for "material change in country conditions" at all but instead directly challenges the BIA's fact-finding, contending it abused its discretion in determining the relevant country conditions in 2008. This dispute, as far as it concerns his asylum and withholding of removal claims, is thus beyond our jurisdiction to review. *See Vargas v. Holder*, 567 F.3d 387, 391 (8th Cir. 2009) (noting that an argument that the "BIA failed to consider all factors presented" amounted "only to a disagreement with the outcome of the BIA's weighing of those factors"); *Arreola*, 324 F. App'x at 508.

Sharif also claims that the BIA committed "legal error" by "failing to recognize that [he] could not have supplied evidence of the treatment of Americanized Somali deportees during April 2008" because removals from the United States to Somalia were suspended at that time. Sharif's contention lacks merit because the BIA did not require him to present evidence regarding the conditions faced by "Americanized Somalis" in 2008 but instead found that he had failed to present any evidence concerning similarly situated individuals such as "criminal deportees," "members of minority clans," or "individuals viewed as Christians due to their tattoos" that would support his claim regarding country conditions in 2008. The BIA did not err in requiring evidence of country conditions in 2008 relevant to Sharif's claims. *See Zeah*, 828 F.3d at 703-04.

Finally, we cannot say the BIA abused its discretion in determining that further proceedings on Sharif's motion to reopen his CAT claim were not warranted by the newly presented evidence attached to his motion to remand. *Caballero-Martinez*, 920 F.3d at 549 (reviewing "the denial of a motion to remand . . . for abuse of discretion" in the absence of the criminal-alien bar). Though she alleged that Sharif's brother had been harassed by government authorities, Sharif's sister did not discuss torture in her newly produced affidavit. Instead, she specifically said that Sharif's brother was detained for a short period of time "without being seriously hurt." As a result, the letter did not present new evidence that demonstrated a change in country conditions material to Sharif's CAT claim. *See Ramirez-Peyro*, 574 F.3d at 899 (explaining that the "pain or suffering" alleged by a petitioner must be "severe" in order to constitute torture meriting CAT relief).

### E.

Finally, Sharif argues that the BIA's "wholesale failure to consider [his] evidence and arguments" in evaluating both his motion to reopen and his motion to remand violated his right to due process as protected by the Fifth Amendment. As support, Sharif contends that the different outcomes between his case and the cases of similarly situated Somalis illustrate that Sharif's proceedings "were infected with constitutional and legal error." Because this allegation implicates a constitutional question, we have jurisdiction to review it. *Hanan*, 519 F.3d at 764. Nonetheless, this argument is untimely as it was only raised in Sharif's reply brief. Indeed, as with the "changed country conditions" argument above, Sharif initially argued the BIA abused its discretion in weighing the evidence, only raising in passing "concerns" about "the due process afforded" Sharif. Once confronted with the criminal-alien bar, Sharif shifted course in his reply brief, framing his argument as a due process claim. We generally do not consider arguments first raised in a reply

brief that, like here, were not developed in the opening brief.[3] *See Navarijo-Barrios*, 322 F.3d at 564 n.1.

Even had Sharif properly raised this argument, the record does not support it. Hearings before the BIA must be "fundamentally fair," *Al Khouri v. Ashcroft*, 362 F.3d 461, 464 (8th Cir. 2004), and the petitioner "must be given the opportunity to fairly present evidence, offer arguments, and develop the record," *Tun v. Gonzales*, 485 F.3d 1014, 1025 (8th Cir. 2007). But "[t]he BIA is entitled to a presumption of regularity," and "it is not required by the Constitution to mention every piece of evidence that it considered." *Doe*, 651 F.3d at 831.

Here, the BIA addressed almost all of Sharif's arguments in its opinion. *See id.* (noting that "an alien has no constitutional right to a full-blown written opinion on every issue" and affirming because each of petitioner's substantial issues was either addressed by the BIA or rendered irrelevant by its decision). The BIA noted that it had "considered the entirety of [Sharif's] claims on appeal," and it specifically discussed the declaration of Christopher Anzalone, an expert on Somalia, upon which Sharif relied extensively in his motion to reopen. It also weighed other documentary evidence submitted by Sharif and provided a thorough analysis as to why he had not demonstrated a material change in country conditions. It is "not necessary for the BIA to list every possible positive and negative factor in its decision," and it has "no duty to write an exegesis on every contention." *Averianova*

---

[3]Furthermore, we would not address Sharif's due process complaint if it were timely raised. We have long held that we are precluded from reviewing "unexhausted claims for a violation of procedural due process." *Ramirez*, 902 F.3d at 770; *Gonzalez v. Chertoff*, 454 F.3d 813, 816 (8th Cir. 2006). Sharif did not claim his due process rights were violated in his appeal before the BIA, nor did he file a motion for reconsideration alleging a due process violation by the BIA. *See Rivera-Guerrero*, 926 F.3d at 1053 (denying review of due process claim where petitioner failed to present claim to the BIA). Thus, the issue is unexhausted, and we are precluded from reviewing it.

*v. Holder*, 592 F.3d 931, 936 (8th Cir. 2010). The record simply does not support Sharif's claim that the BIA did not consider his submissions.[4]

### III.

For the foregoing reasons, we deny Sharif's petition in part and dismiss the remainder for lack of jurisdiction.

_____

[4]Sharif also briefly suggests that the BIA's refusal to reopen proceedings on its own motion "raises significant concerns as to the due process afforded" him. We have repeatedly held that aside from "colorable" constitutional claims, *Chong Toua Vue*, 953 F.3d at 1057, "[w]e lack jurisdiction to review the [BIA's] refusal to reopen a case *sua sponte*, because there is no meaningful standard against which to judge the agency's exercise of discretion, and the determination is committed to agency discretion by law," *Barajas-Salinas*, 760 F.3d at 907 (citing *Tamenut v. Mukasey*, 521 F.3d 1000, 1001, 1004-05 (8th Cir. 2008) (en banc) (per curiam)). Sharif offers no explanation as to how the BIA's failure to reopen proceedings on its own motion violated his due process rights. We thus do not address the argument. *See Tamenut*, 521 F.3d at 1005 (rejecting due process claim where petitioner "point[ed] to nothing that call[ed] into doubt the fundamental fairness of the procedures employed" by the BIA). And although Sharif points out that some of our sister circuits have recognized an exception permitting appellate review "when the BIA has relied on an incorrect legal premise" in refusing to exercise its discretionary authority to reopen a case, *see, e.g.*, *Bonilla v. Lynch*, 840 F.3d 575, 589 (9th Cir. 2016), we recently "shut the door on this exception," *Chong Toua Vue*, 953 F.3d at 1057.