# United States Court of Appeals

### For the Eighth Circuit

_____

No. 21-3328

_____

Caimin Li

*Petitioner*

v.

Merrick B. Garland, Attorney General of the United States

*Respondent*

_____

Petition for Review of an Order of the
Board of Immigration Appeals

_____

Submitted: March 24, 2022
Filed: May 27, 2022

_____

Before GRUENDER, ERICKSON, and GRASZ, Circuit Judges.

_____

GRASZ, Circuit Judge.

Caimin Li, a native and citizen of China, entered the United States in 2007 on a nonimmigrant K-1 visa he obtained based on his engagement to a U.S. citizen. He was ordered removed to China in 2012 after he was convicted of aiding and abetting marriage fraud in order to evade immigration laws and procure his admission to the United States, *see* 8 U.S.C. §§ 1227(a)(1)(G)(ii), 1325(c), and an immigration judge

(IJ) denied his applications for asylum, withholding of removal, and protection under the Convention Against Torture (CAT). In 2020, he filed his third motion to reopen his proceedings, in which he sought to reapply for asylum, withholding of removal, and protection under the CAT based on changed country conditions in China.[1] The Board of Immigration Appeals (BIA) concluded Li's motion was untimely and numerically barred, and he was not excused from these bars because he failed to show a material change in country conditions. The BIA also concluded Li failed to show prima facie eligibility for relief. Finally, it declined to exercise its discretion to grant reopening sua sponte. Li petitions for review of the BIA's order. For the following reasons, we deny the petition and vacate Li's stay of removal.

We review the denial of motions to reopen, which are disfavored, under a highly deferential abuse-of-discretion standard. *See Kucana v. Holder*, 558 U.S. 233, 242–53 (2010); *INS v. Abudu*, 485 U.S. 94, 107 (1988). A noncitizen generally may file one motion to reopen within ninety days of a removal order, but the time and numerical bars may be excused for a noncitizen seeking to apply for asylum, withholding of removal, and CAT relief if the noncitizen shows changed country conditions in the country of nationality or removal since the initial proceeding, based on material evidence not previously available or discoverable, and if the noncitizen shows prima facie eligibility for relief. *See* 8 U.S.C. § 1229a(c)(7)(A), (C)(i)–(ii); *Sharif v. Barr*, 965 F.3d 612, 618 (8th Cir. 2020); 8 C.F.R. § 1003.2(c)(3)(ii). "[T]o prevail on a motion to reopen alleging changed country conditions where the persecution claim was previously denied based on an adverse credibility finding in the underlying proceedings, the [noncitizen] must either overcome the prior determination or show that the new claim is independent of the evidence that was

---

[1]The agency denied Li's first motion to reopen based on changed country conditions, and this court denied Li's petition for review of that decision. *See Caimin Li v. Sessions*, 699 F. App'x 590, 590–91 (8th Cir. 2017) (unpublished). The agency also denied Li's second motion to reopen based on an alleged jurisdictional defect, and Li did not petition for review of that decision.

found to be not credible." *Matter of F-S-N-*, 28 I. & N. Dec. 1, 1 (BIA 2020). If the noncitizen makes this showing, only then is it necessary to consider eligibility for the requested relief based on changed country conditions. *See id.* at 3. The movant "bears a heavy burden" of showing reopening is warranted. *Sharif*, 965 F.3d at 618 (quoting *Hernandez-Moran v. Gonzales*, 408 F.3d 496, 499 (8th Cir. 2005)).

In the 2012 removal proceedings, Li based his claim in part on an alleged incident in 2005 where he said officers detained, beat, and interrogated him for approximately three days about his Christianity, after he had attended an underground church and distributed religious flyers. The IJ, however, concluded Li was not credible, and even if he was, his asylum claim was untimely, and his other claims thus failed. In making the adverse credibility finding, the IJ discussed significant concerns based on Li's marriage fraud and other actions inconsistent with someone who feared for his life, including Li's over four-year delay in seeking relief after entry. The IJ highlighted numerous inconsistencies between Li's testimony and his largely unreliable documentation, including his failure to submit identity documents, his failure to submit evidence to corroborate his claim of belonging to an underground church in China, and his failure to corroborate his claim regarding the 2005 incident, which the IJ afforded "no weight" based on, among other things, a forensic expert's inspection of Li's documentation. As a result, the IJ "[did] not credit [Li's] testimony regarding his identity, his membership in an underground church, or his arrest and beating in 2005," noting he previously attended a state-sponsored church, did not claim he opposed the state sponsored church, and was unable to define distinctions between sanctioned and unsanctioned churches. Li did not appeal to the BIA.

In support of his present motion to reopen, Li submitted, among other things, a new I-589 application for relief, indicating he experienced past mistreatment based on the 2005 detention. Li attached to his application an unsworn, un-notarized personal statement, in which he, in part, stated he was detained for spreading the gospel, professed his deepening Christian beliefs and devotion, expressed a desire to

become a preacher, stated Chinese Christians had to choose between state-sanctioned or illegal house churches, described general mistreatment of churches in urban areas close to his home province, and expressed he feared persecution because China had no religious freedom. He submitted undated photographs of him handing out what he claimed to be religious materials. In a letter, a pastor of a Christian church Li had not attended since 2012 attested to Li's faith and indicated Li had not attended a fixed church since 2012 but went to different churches when possible.

In denying Li's present motion to reopen, the BIA initially addressed whether Li had satisfied his burden of proving a material change in country conditions so as to qualify for an exception to the time and numerical bars to his untimely motion. The BIA concluded he did not. The BIA next addressed whether Li had established prima facie eligibility for relief under *F-S-N-*. It again concluded he had not. First, the BIA concluded Li failed to meaningfully address the IJ's adverse credibility determination. Second, the BIA concluded Li's personal statement contradicted his argument that his new asylum claim was factually independent of his prior asylum claim, because he reasserted his discredited claim about being detained in 2005. Third, the BIA concluded Li's claim was too speculative, for although counsel suggested Li would partake in illegal religious activities or attend an underground church upon removal, the IJ previously discredited Li's claims of being detained or being an underground church member, and his unsworn, un-notarized personal statement only vaguely described what he intended to do when he returned. Relatedly, the BIA concluded the pastor's letter did not independently and credibly establish Li would go to an underground Christian church or engage in unsanctioned religious activities. Based on the record, the BIA therefore concluded Li did not adequately overcome the prior adverse credibility determination or show his claim was independent of evidence previously found not credible.

Li argues the BIA erred in denying relief on this basis. He does not dispute *F-S-N-* requires him to overcome the adverse credibility determination or show his

claim is independent of the discredited evidence. He, however, argues he showed his new claim was factually independent because, while he mentioned his 2005 detention, he was not attempting to reassert or relitigate his prior claim but was only trying to show he understood the lack of religious freedom in China. He also argues he independently and credibly established his intent to attend an underground church and engage in unsanctioned activities in China because of his deepening faith and increased devotion while in the United States. He asserts he showed prima facie eligibility for relief, arguing reopening is warranted whenever the facts show it would be "worthwhile" to develop the issues. Counsel argues Li demonstrated a well-founded fear of persecution because Li felt a duty to proselytize in China; Chinese officials will "eventually" find Li "even if" Li practiced in private; "even assuming" Li would experience only isolated incidents or brief detentions, those would constitute persecution cumulatively; after Li's "eventual next encounter, the police will be apt to monitor Li more closely"; and a "series of escalating events over Li's lifetime would definitely rise to the level of persecution." Li also argues he is prima facie eligible for CAT relief based on country condition reports. The Attorney General argues Li failed to show changed conditions and failed to establish prima facie eligibility under *F-S-N-*.

## Prima Facie Eligibility for Relief

We conclude the BIA did not abuse its discretion in denying Li's motion to reopen based on his failure to demonstrate prima facie eligibility for relief. *See Njie v. Lynch*, 808 F.3d 380, 384–86 (8th Cir. 2015) (reviewing for an abuse of discretion adverse prima facie determination on motion to reopen); *see also Caballero-Martinez v. Barr*, 920 F.3d 543, 548 (8th Cir. 2019) (reaffirming, based on BIA precedents, the BIA will reopen only if it is satisfied the new evidence "would likely change the result").

Although Li argues he was not attempting to reassert or relitigate his prior claim, he specifically included the alleged 2005 detention—which the IJ wholly discredited—in both his new application and personal statement, and he continued to assert entitlement to relief based on underground Christian churches. The IJ therefore rationally concluded Li's new claim lacked factual independence because when a motion "has a substantially similar factual basis and is, in essence, a continuation of the [applicant's] previously discredited claims," the "newly raised claim is not independent of [his] prior one but merely supplements it, 'intertwining the new with the old.'" *F-S-N-*, 28 I. & N. Dec. at 4 (cleaned up) (quoting *Slyusar v. Barr*, 787 F. App'x 309, 314 (6th Cir. 2019)). And, like in 2012, Li proffered no evidence—new or otherwise—to corroborate the alleged 2005 detention, interrogation, and beating. *See F-S-N-*, 28 I. & N. Dec. at 3–4 (holding factual predicate of motion to reopen must be independent of testimony already found unbelievable, and when new evidence "is contingent, in part or in whole, on factors that were determined to lack credibility and have not been rehabilitated, the [movant's] ability to successfully establish prima facie eligibility may be undermined") (collecting cases); *see also Uddin-Nessa v. Barr*, 827 F. App'x 50, 51 (2d Cir. 2020) (unpublished) (holding BIA did not err under *F-S-N-* when concluding noncitizen's evidence on reopening failed to overcome the prior adverse credibility determination—which was based on questions over whether noncitizen had been arrested—when noncitizen failed to address findings leading to that determination).

Moreover, Li neither explains why his statement was unsworn and not notarized, nor explains why the BIA erred in discrediting it for that reason. *See* 8 U.S.C. § 1229a(c)(7)(B) (motion to reopen shall be supported by affidavits or other evidentiary material). In light of Li's marriage fraud scheme and the IJ's adverse credibility finding, "the BIA did not abuse its discretion in requiring more than unsworn [documents] . . . to establish [his] prima facie eligibility" for relief. *Njie*, 808 F.3d at 385–86 (holding the BIA did not abuse its discretion in denying reopening when an IJ found noncitizen who committed marriage fraud was not

-6-

credible, and the BIA concluded noncitizen's unsworn letters purporting to show a well-founded fear of persecution therefore were not credible and failed to show prima facie eligibility); *see also Singh v. Barr*, 827 F. App'x 154, 155 (2d Cir. 2020) (unpublished) (holding BIA did not err in concluding noncitizen's unsworn statement was insufficient to overcome prior adverse credibility determination under *F-S-N-*). Nor do we discern reversible error, on this record, in the BIA's conclusion that Li's claims in his discredited statement were too speculative to show prima facie eligibility for relief, even when considered in combination with the pastor's letter and the handful of undated photographs lacking any description. *See F-S-N-*, 28 I & N. Dec. at 5 (holding evidence "lack[ing] specificity and detail" is insufficient to independently establish a valid claim or to rehabilitate credibility, and letters from interested witnesses like family and friends are of limited value in establishing prima facie eligibility); *cf. Jima v. Barr*, 942 F.3d 468, 474 (8th Cir. 2019) ("[T]his string of assumptions, although plausible, is nothing more than a chain of hypothetical inferences and does not demonstrate a clear likelihood of torture."); *Lemus-Arita v. Sessions*, 854 F.3d 476, 482 (8th Cir. 2017) (holding an asylum applicant's fear must not be so speculative or general as to lack credibility); *Diop v. Holder*, 586 F.3d 587, 591 (8th Cir. 2009) (holding agency did not err by giving little weight to friend's unsworn letter containing generalities).

The BIA's denial of Li's motion to reopen based on his failure to demonstrate prima facie eligibility for relief is dispositive.[2] *Robles v. Garland*, 23 F.4th 1061,

---

[2]Because of our holding regarding Li's prima facie case, we need not decide whether the BIA's determination that Li failed to show changed country conditions is supported by substantial evidence. *See Mohamed v. Barr*, 983 F.3d 1018, 1022 (8th Cir. 2020) (standard of review). We note, however, the BIA's changed-conditions analysis failed to appropriately address Li's argument that conditions had changed dramatically in China between 2011 and 2020. Simply because conditions were repressive in China in 2011 and continued to be repressive in 2020 does not mean the conditions had not materially changed. The applicable standard requires that the conditions during the two relevant periods be juxtaposed,

1064 (8th Cir. 2022) (noting denial of motion to reopen may be based on any of three independent grounds including whether the evidence was previously available or the movant is ultimately entitled to discretionary relief (citing *Abudu*, 485 U.S. at 104–05)); *cf. Chen v. Mukasey*, 510 F.3d 797, 803 (8th Cir. 2007) (holding when claims for asylum, withholding of removal, and CAT relief depend on the same discredited testimony, this court must uphold the denial of each form of relief).

Finally, Li has waived a challenge to the BIA's refusal to grant reopening sua sponte, *see Chay-Velasquez v. Ashcroft*, 367 F.3d 751, 756 (8th Cir. 2004), a decision this court, in any event, lacks jurisdiction to consider absent a colorable constitutional claim, *see Chong Toua Vue v. Barr*, 953 F.3d 1054, 1057 (8th Cir. 2020).

Accordingly, we deny the petition for review and vacate the stay of removal.

_____

---

and that differences and similarities be noted. *See Sharif*, 965 F.3d at 618. There was certainly evidence here in the 2015 Annual Report of the Congressional-Executive Commission on China showing that abuse and repression of Christians in China have gotten materially worse since President Xi Jinping assumed power in 2013.