FILED
United States Court of Appeals
Tenth Circuit

July 8, 2021

Christopher M. Wolpert
Clerk of Court

**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**

_____

ELVIA TENEZACA-DUTAN,

    Petitioner,

v.

MERRICK B. GARLAND,
United States Attorney General,[*]

    Respondent.

No. 20-9586
(Petition for Review)

_____

**ORDER AND JUDGMENT**[**]
_____

Before **HARTZ**, **BRISCOE**, and **BACHARACH**, Circuit Judges.
_____

    In this petition for review, we consider what constitutes a material

change in country conditions. The issue arises from Ms. Elvia

_____

[*]     After the filing of the petition for review, Merrick B. Garland became the Attorney General of the United States. So we have substituted Attorney General Garland as the respondent. *See* Fed. R. App. P. 43(c)(2).

[**]     We conclude that oral argument would not materially help us to decide the appeal. *See* Fed. R. App. P. 34(a)(2)(C); 10th Cir. R. 34.1(G). So we have decided the appeal based on the record and the parties' briefs.

    Our order and judgment does not constitute binding precedent except under the doctrines of law of the case, res judicata, and collateral estoppel. But the order and judgment may be cited for its persuasive value if otherwise appropriate. *See* Fed. R. App. P. 32.1(a); 10th Cir. R. 32.1(A).

Tenezaca-Dutan's application for reconsideration of the denial of a motion to reopen.

Reopening may be available to noncitizens after they unsuccessfully seek asylum or reconsideration. But a motion to reopen is ordinarily due 90 days from the date of removal. *See* 8 U.S.C. § 1229a(c)(7)(C)(i); 8 C.F.R. § 1003.23(b)(1). Ms. Tenezaca-Dutan missed the 90-day deadline by over a decade: The Board of Immigration Appeals ordered her removal in 2008, and she waited until 2019 to seek reopening. But federal law excuses satisfaction of the 90-day deadline upon proof of a material change in country conditions. 8 C.F.R. § 1003.23(b)(4)(i); 8 U.S.C. § 1229a(c)(7)(C)(ii).

Invoking this law, Ms. Tenezaca-Dutan moved for reopening based on changes taking place in Ecuador. The immigration judge denied the motion and a request to reconsider this ruling. The Board dismissed her appeal of the ruling on her motion to reconsider. Ms. Tenezaca-Dutan petitions for judicial review, arguing that the Board failed to explain its reasoning and lacked substantial evidence for its findings. We reject these arguments.

## I. The Board adequately explained its reasons for denying reconsideration.

In part, Ms. Tenezaca-Dutan contends that the Board (1) ignored her evidence of a surge in Ecuadorian femicides, (2) deferred to the

2

immigration judge rather than reweigh the evidence, and (3) failed to explain why it did not regard the increase in femicides as a material change in country conditions.

First, Ms. Tenezaca-Dutan identifies no evidence that the Board ignored. The Board need not discuss every piece of evidence in the record. *See Hadjimehdigholi v. I.N.S.*, 49 F.3d 642, 648 n.2 (10th Cir. 1995). And the Board specifically addressed the evidence of an increase in femicides in 2017. Admin. R. at 4.

Second, the Board did not err by failing to reweigh the evidence. Rather, the Board appropriately reviewed the immigration judge's factual findings for clear error. *See* 8 C.F.R. § 1003.1(d)(3)(i).

Third, the Board provided an adequate explanation. "[A]ll that is necessary is a decision that sets out terms sufficient to enable us as a reviewing court to see that the Board has heard, considered, and decided." *Hadjimehdigholi*, 49 F.3d at 648 n.2 (internal quotation marks omitted).

We know why the Board decided the way it did, for it said that Ms. Tenezaca-Dutan had not "persuasively explained how [the evidence of increased femicides in 2017] constitute[d] materially changed country conditions arising in Ecuador, rather than a continuation of the same or similar conditions in that country." Admin. R. at 4.

According to Ms. Tenezaca-Dutan, the Board did not say why it had questioned the sufficiency of her explanation. But the Board hadn't

3

addressed the issue in a vacuum, for the Board was responding to Ms. Tenezaca-Dutan's criticism of the immigration judge's decision. So an understanding of the Board's explanation requires consideration of the immigration judge's reasoning. *See Sarr v. Gonzales*, 474 F.3d 783, 790 (10th Cir. 2007) ("Where the [Board] does not explicitly incorporate or summarize the [immigration judge's] reasoning, but its opinion is opaque or otherwise unclear, we may look to the [immigration judge's] opinion for guidance on the theory that the [Board] did the same.").

The immigration judge had recognized an extensive history of violence inflicted on women in Ecuador:

> As to changed circumstances in Ecuador, the evidence she presents seems to show that women have had problems there for years. For example, she presents evidence from 2012 that 60 percent of the women who responded to the National Survey on Family Relations and Gender Violence said that they had suffered gender violence . . . and one out of four had suffered sexual violence." In her affidavit, the Respondent states, "My mother was accused of witchcraft. As a woman, her life was in danger so was mine," which seems to evidence danger to women before the Respondent left Ecuador.

Admin. R. at 53 (citations omitted). In denying her motion to reconsider, the immigration judge concluded that Ms. Tenezaca-Dutan had not shown "that [the increase in femicides in 2017] was a material change in country conditions as opposed to a continuation of, with some fluctuation in, existing conditions that dated back to before she [had] left Ecuador in 2007." *Id.* at 61.

4

Ms. Tenezaca-Dutan appealed to the Board, relying on an increase in femicides and characterizing them as the most violent possible manifestations of violence against women. *Id.* at 43–44. The Board concluded that Ms. Tenezaca-Dutan hadn't explained the significance of the new evidence. *Id.* at 4. Given the backdrop of the immigration judge's reasoning, we can easily discern the Board's reasoning.

Ms. Tenezaca-Dutan points out that we regarded the Board's explanation as inadequate in *Qiu v. Sessions*, 870 F.3d 1200 (10th Cir. 2017). There the Board had provided no explanation for rejecting evidence of a 300% increase in persecution of Christians since the noncitizen's removal hearing, unprecedented violations of religious freedom, and possibly the most egregious and persistent wave of persecution against Christians in roughly 50 years. *Id.* at 1204.

The difference here is that the Board did explain its reasoning. The immigration judge downplayed the uptick in femicides, and Ms. Tenezaca-Dutan appealed based solely on the numerical increase. The Board acknowledged this assertion but pointed out that Ms. Tenezaca-Dutan had not explained the significance of the surge in femicides. Even now, Ms. Tenezaca-Dutan does not suggest anything else that the Board needed to say. So *Qiu* does not support relief.

5

**II.     The Board acted within its discretion in questioning Ms. Tenezaca-Dutan's explanation for the significance of the numerical increase in femicides.**

Ms. Tenezaca-Dutan also challenges the evidentiary support for the Board's finding. In reviewing this challenge, we apply the abuse-of-discretion standard. *Rodas-Orellana v. Holder*, 780 F.3d 982, 990 (10th Cir. 2015). "The [Board] abuses its discretion when its decision provides no rational explanation, inexplicably departs from established policies, is devoid of any reasoning, or contains only summary or conclusory statements." *Id.* (internal quotation marks omitted). The agency's "findings of fact are conclusive unless any reasonable adjudicator would be compelled to conclude to the contrary." 8 U.S.C. § 1252(b)(4)(B).

To consider whether the Board abused its discretion, we consider

- when a change in country conditions is material and

- what the pertinent time-period is for assessing the materiality of a change in country conditions.

We consider these questions based on Ms. Tenezaca-Dutan's evidence of a change in country conditions.

To determine the materiality of the change in country conditions, the agency compares the frequency of femicides from the time of the removal order to the time that Ms. Tenezaca-Dutan moved to reopen. *See In re S-Y-G-*, 24 I. & N. Dec. 247, 253 (B.I.A. 2007).

6

To show a material change in country conditions, Ms. Tenezaca-Dutan relies on this bar-graph as evidence of increased femicides from 2014 to 2017:



R. at 176.

The bar-graph shows an increase in femicides after 2014, but

- the order of removal issued in 2008 and

- Ms. Tenezaca-Dutan did not point to any information about femicides from 2008 to 2014.[1]

But let's assume that femicides remained relatively constant from 2008 to 2014. A change in country conditions could be material only if it

---

[1] The record contains little information about femicides prior to 2014. But the record does show 47 femicides in one Ecuadorian city from 2010 to 2012.

7

"would likely change the result in the case." *Maatougui v. Holder*, 738 F.3d 1230, 1240 (10th Cir. 2013) (quoting *In re Coelho*, 20 I. & N. Dec. 464, 473 (B.I.A. 1992)).

Ms. Tenezaca-Dutan put it this way in her motion to reconsider: "The critical question is not whether there is generalized abuse against women, but rather whether circumstances have changed sufficiently that a petitioner who previously did not have a legitimate claim for asylum now has a well-founded fear of future persecution." Admin. R. at 71.

Ms. Tenezaca-Dutan never explained how the increase in femicides would have affected her eligibility for asylum or withholding of removal. She sought asylum and withholding of removal based on her Catholic religion, political beliefs, and membership in a group of daughters of Ecuadorean women accused of witchcraft.[2] Petitioner's Opening Br. at 34.

None of these groupings bore an obvious link to femicide. So even if femicides had increased significantly from 2008 to 2019, the Board could reasonably question the relevance of that increase to Ms. Tenezaca-Dutan's applications for asylum and withholding of removal. *See Ramos-Lopez v. Lynch*, 823 F.3d 1024, 1026 (5th Cir. 2016) (concluding that an increase in femicides in Guatemala was immaterial when the petitioner had not

---

[2]     She also sought asylum based on past persecution, but the change in country conditions would bear only on the fear of future persecution. *See* Part III, below.

8

compared the recent figures to those existing at the time of removal or shown how the increase in femicides related to the petitioner's claims).

And even if femicides bore on Ms. Tenezaca-Dutan's eligibility for asylum and withholding of removal, the Board could reasonably question the significance of the numerical increase absent further explanation from Ms. Tenezaca-Dutan. Certainly the Board might be alarmed by an increase of 81 femicides in three years. But Ms. Tenezaca-Dutan did not present evidence of the number of femicides in Ecuador in 2008. Moreover, in 2017, over 8 million females lived in Ecuador. United Nations, Dep't of Econ. and Soc. Affs., *World Population Prospects* 18 (2017 rev.).[3] Given the presence of millions of women in Ecuador and uncertainty regarding the frequency of femicides from 2008 to 2014, the Board could reasonably question Ms. Tenezaca-Dutan's explanation for the materiality of 81 more femicides in 2017 than in 2014. *See Tovar v. Lynch*, 674 F. App'x 691, 693 (9th Cir. 2017) (unpublished) (upholding the Board's conclusion that a 300% increase in femicides was not material because the total number of femicides represented only about 1/10,000 of the female population in Guatemala).

---

[3] We can take judicial notice of the United Nations's report. *See United States v. Burch*, 169 F.3d 666, 671 (10th Cir. 1999).

9

## III. Past persecution does not support reconsideration of the refusal to reopen the proceedings.

Ms. Tenezaca-Dutan also argues that the Board failed to recognize her past persecution. But she is challenging only the refusal to reconsider the denial of a motion to reopen; she is not challenging the earlier denial of her applications for asylum and withholding of removal. Past persecution does not bear on a change in country conditions, which is required to reopen the proceedings after 90 days. *See* note 2, above; *see also Zeah v Lynch*, 828 F.3d 699, 704 (8th Cir. 2016) ("Although helpful for a claim of asylum, the fact that [the petitioner] may have suffered past persecution undermines her claim of changed country conditions.").

## IV. Conclusion

Ms. Tenezaca-Dutan has not shown error in the denial of the motion for reconsideration. We thus deny the petition for review.

Entered for the Court

Robert E. Bacharach
Circuit Judge